# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | 1:08cv1349 OWW DLB |
| ) | |
| ) | FINDINGS AND RECOMMENDATIONS |
| ) | REGARDING PLAINTIFF'S |
| ) | MOTION FOR DEFAULT JUDGMENT |
| ) | AGAINST CENTRAL VALLEY INSURANCE |
| Plaintiff, ) | SERVICES, INC., INSTANT SERVICES, INC., |
| ) | WASHINGTON MUTUAL BANK, AS |
| v. ) | ASSIGNEE OF AMERICAN SAVINGS BANK, |
| ) | BENEFICIAL CALIFORNIA, INC., |
| FRANK A. VACANTE, et al., ) | NORTHERN CALIFORNIA COLLECTION |
| ) | SERVICE, INC., TURLOCK IRRIGATION |
| ) | DISTRICT, AND DEUTSCHE BANK |
| ) | NATIONAL BANK TRUST COMPANY FKA |
| ) | BANKERS TRUST |
| ) | |
| Defendants. ) | (Document 109) |
| _____ ) | |

On December 10, 2009, Plaintiff United States of America ("Plaintiff" or "United States")
filed the instant motion for default judgment against Defendants Central Valley Insurance
Services, Inc., Instant Services, Inc., Washington Mutual Bank, Beneficial California, Inc.,
Northern California Collection Service, Inc., Turlock Irrigation District and Deutsche Bank
National Bank Trust Company.  The matter was heard on February 5, 2010, before the Honorable
Dennis L. Beck, United States Magistrate Judge.  Adair F. Boroughs appeared telephonically on
behalf of Plaintiff United States.  Defendant Frank A. Vacante, proceeding pro se, appeared
telephonically.  No other Defendants appeared.

///

///

1

# BACKGROUND

On June 10, 2008, the United States filed this action (1) to reduce to judgment federal tax assessments against Frank Vacante, Ute Vacante, Central Valley Insurance Services, Inc. ("CVIS") and Instant Services, Inc. ("Instant Services"), (2) to adjudicate that Frank Vacante and Ute Vacante are alter egos of CVIS and Instant Services, (3) to adjudicate that CVIS is a successor-in-interest to the sole proprietorship run by Frank and Ute Vacante and that Instant Services is a successor-in-interest to CVIS, and (4) to foreclose federal tax liens against five parcels of real property: the Lander Avenue Property, the Minaret Property, the Snedigar Property, the Lupin Property and the August Property. See Second Amended Complaint ("SAC").

A.    Factual Background

      1.        Insurance Businesses

According to the operative complaint, Frank and Ute Vacante are husband and wife. In December 1984, Frank Vacante purchased 5 Bar-Bee Insurance Company from Ute's former husband, Dan Belew II. Since 1987, the Vacantes have operated an insurance business together. By November 1992, the Vacantes' unincorporated business had unpaid federal employment tax liabilities. Mr. Vacante filed a tax return on November 3, 1992, indicating that the unincorporated business no longer had employees.

To avoid paying the federal tax liabilities, the Vacantes incorporated CVIS on August 20, 1993, and transferred the assets of the Vacantes' unincorporated business to CVIS. The Vacantes were the owners of CVIS. Ute's son, Dan Belew III, was named as the initial President and CEO of CVIS. Ute was named as the initial Vice President and CFO. Cynthia Nunes, Dan's then live-in girlfriend, was named Secretary.

On or around April 17, 1997, the State of California suspended the corporate charter of CVIS. Despite the suspension, the Vacantes continued to operate CVIS until at least 2001. In March 2001, the California Department of Insurance closed CVIS.

On March 23, 2001, Instant Services was incorporated in Nevada. The initial officers were President Frank Vacante, Secretary Ute Vacante and Treasurer Dan Belew. Instant Services

did not register as a foreign corporation in California. From 2001 through 2005, the Vacantes filed Form 941 (employment) tax returns through Instant Services, but were operating their insurance business under names used by them when they were operating the business as an unincorporated entity.

The Vacantes' unincorporated business, CVIS and Instant Services were all operated out of the same business location, employed the same staff, sold the same product and utilized the same phone numbers. They also were all operated under Frank Vacante's insurance broker's license.

The United States alleges that CVIS is a successor-in-interest to the Vacantes' unincorporated business and Instant Services is a successor-in-interest to CVIS. The United States further alleges that the Vacantes were alter egos of CVIS and Instant Services.

2.      Federal Tax Liabilities

        a.      CVIS

The United States contends that CVIS failed to file Form 941 returns for the eleven tax periods ending March 31, 1995, June 30, 1995, September 30, 1995, December 31, 1995, March 31, 1996, June 30, 1996, September 30, 1996, December 31, 1996, March 31, 1997, June 30, 1997, and March 31, 1999. SAC ¶ 104; Declaration of IRS Revenue Officer Randy Reece ("Reece Dec.") ¶ 4. Because CVIS failed to file tax returns, the IRS made assessments against CVIS for these periods. SAC ¶ 106; Reece Dec. ¶ 4.

CVIS did file Form 941 returns for the eight tax periods ending December 31, 1998, September 30, 1999, December 31, 1999, March 31, 2000, June 30, 2000, September 30, 2000, December 31, 2000, and March 31, 2001. Reece Dec. ¶¶ 24, 26-28, 33-37. However, CVIS failed to pay the full amount of the employment taxes shown due and owing and failed to make timely federal tax deposits. SAC ¶ 105; Reece Dec. ¶¶ 5, 50, 52-58. The IRS assessed penalties for failure to timely pay the taxes and assessed penalties for failure to make federal tax deposits. SAC ¶ 106; Exhibits A-17, A-23, A-24, A-26, A-28, A-30, A-32 and A-34 to Reece Dec.

CVIS filed a Federal Unemployment Tax Act ("FUTA") Form 940 for tax year 2000, but failed to pay the FUTA taxes shown due and owing on the return. SAC ¶ 164. The IRS assessed penalties for failure to timely pay these taxes. SAC ¶ 106.

CVIS failed to file any Form W-2s, which employers are required to file annually with the IRS for each employee, for tax year 1998. SAC ¶ 165; Reece Dec. ¶ 39. The IRS assessed a penalty for this failure. SAC ¶ 106; Exhibit A-37 to Reece Dec.

Despite notice and demand for payment, CVIS has failed to pay all of the identified assessments. SAC ¶¶ 166-67; Reece Dec. ¶¶ 40-60 and Exhibits A-38 through A-51. As of December 1, 2009, CVIS' tax liabilities total **$858,794.86,** which includes accrued interest, penalties and other statutory additions.[1] Reece Dec. ¶¶ 40-60.

b.        Instant Services

Instant Services failed to file Form 941 returns for the three tax periods ending September 30, 2001, December 31, 2001, and September 30, 2004. SAC ¶¶ 107; Reece Dec. ¶ 61. Because Instant Services failed to file tax returns, the IRS made employment tax assessments against Instant Services for these periods. SAC ¶ 108; Reece Dec. ¶ 61.

Instant Services did file Form 941 returns for the eight tax periods ending March 31, 2002, December 31, 2002, March 31, 2003, September 30, 2003, June 30, 2004, December 31, 2004, March 31, 2005, and September 30, 2005. Reece Dec. ¶¶ 67-71, 74-76. However, Instant Services failed to pay the full amount owing and failed to make timely federal tax deposits. SAC ¶ 169; Reece Dec. ¶ 62. The IRS assessed penalties for failure to timely pay these taxes and for failure to make federal tax deposits. SAC ¶ 108; Exhibits A-57, A-59, A-61, A-63, A-65, A-69, A-71 and A-73 to Reece Dec.

Instant Services failed to file a Form 940 return for tax year 2001. Reece Dec. ¶ 77. The IRS assessed a penalty for this failure. SAC ¶ 108; Reece Dec. ¶ 77.

---

[1]There is a one cent discrepancy between the amount identified by the United States and the amount supported by the exhibits. However, there has been no challenge to the asserted amounts and the difference is inconsequential.

Despite notice and demand for payment, Instant Services has failed to pay the identified assessments. SAC ¶¶ 171-72; Reece Dec. ¶¶ 79-90. As of December 1, 2009, Instant Services' tax liabilities total **$85,007.68**, which includes accrued interest, penalties and other statutory additions. Reece Dec. ¶¶ 79-90 and Exhibits A-75 through A-86.

        3.        Defendant Lienholders and the Subject Properties

In this action, the United States is seeking to foreclose its federal tax liens and enforce its prior judgment against the subject properties. The United States explains that the foreclosure count will be determined after either summary judgment or trial. However, as part of the foreclosure count, the Court must "finally determine the merits of all claims to and liens upon the property." 26 U.S.C. § 7403(c). The United States believes that Washington Mutual Bank ("Washington Mutual"), Beneficial California, Inc. ("Beneficial"), Northern California Collection Service, Inc. ("NCCS"), Turlock Irrigation District ("TID") and Deutsche Bank National Bank Trust Company ("Deutsche") may claim an interest in one or more of the subject properties and, therefore, the Court must make a determination as to their claims.

B.    Procedural Background

On June 25, 2008, CVIS was served with a copy of the Summons and Complaint by personal service on Ute Vacante, an officer. (Doc. 9). Instant Services was served on the same day and in the same manner. (Doc. 10). TID also was served that day by personal service on Tami Wallenberg, clerk of the Board of Directors. (Doc. 13).

Beneficial was served on August 15, 2008, by personal service on its agent for service of process. (Doc. 27) Washington Mutual was served on August 19, 2008, by substituted service. (Doc. 28). NCCS also was served on August 19, 2008, by personal service on the President of NCCS. (Doc. 33). In addition, these three defendants were served by mail with copies of the First Amended Complaint on October 24, 2008. (Doc. 44-2).

On December 10, 2008, pursuant to the United States' request, the Clerk of the Court entered default against Washington Mutual, Beneficial and NCCS.

On February 24, 2009, pursuant to the United States' request, the Clerk of the Court entered default against CVIS and Instant Services.

On September 14, 2009, TID also was served with a copy of the SAC. (Doc. 90-2). On November 3, 2009, pursuant to the United States' request, the Clerk of the Court entered default against TID.

On September 30, 2009, Deutsche was served with a copy of the Summons and SAC by personal service on its registered agent. (Doc. 95). On November 19, 2009, pursuant to the United States' request, the Clerk of the Court entered default against Deutsche.

On December 10, 2009, the United States filed the instant motion for default judgment against CVIS, Instant Services, Washington Mutual, Beneficial California, NCCS, TID and Deutsche.

No oppositions have been filed. However, on February 2, 2010, the United States filed a reply and motion to strike Mr. Vacante's attempted appearance on behalf of CVIS and Instant Services. According to the reply, Mr. Vacante sent an opposition to the United States, but it has not been filed with the Court. The United States submits the untimely opposition with its reply and seeks to strike Mr. Vacante's efforts to represent CVIS and Instant Services in defense of the motion.

## **DISCUSSION**

By the instant default judgment motion, the United States seeks (1) to reduce federal tax assessments to judgment against CVIS and Instant Services; and (2) to extinguish any interest held by Washington Mutual, Beneficial, NCCS, TID and Deutsche in the subject properties.

A.    Legal Standard

The United States moves for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), which provides:

> (2)    By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of

6

damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, Moore's Federal Practice § 55.11 (3d ed. 2000).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

B.    Eitel Factors

   1.    Prejudice

CVIS owes over $850,000 in federal tax liabilities, and Instant Services owes over $85,000. According to the United States, neither of these companies still operates and both are essentially judgment proof. Reece Dec. ¶ 91. In order to collect on these liabilities, the United States argues that they must be reduced to judgment so that the United States can pursue enforcement against other individuals and entities. The United States is claiming that the Vacantes are liable for the debts of CVIS and Instant Services under alter ego and successor-in-interest theories. Therefore, to collect the tax liabilities, the United States must be successful on one or more of its alter ego/successor-in-interest claims, the subject properties must be sold, the interests of Washington Mutual, Beneficial, NCCS, TID and Deutsche must be extinguished and the sale proceeds distributed.

As CVIS and Instant Services have not answered the complaint, the United States will suffer prejudice if default judgment is not entered. Further, absent a default judgment against Washington Mutual, Beneficial, NCCS, TID and Deutsche, the sale of the subject property likely

would be negatively affected as it would remain encumbered by any liens or interests of Washington Mutual, Beneficial, NCCS, TID and Deutsche. This could prejudice the United States' efforts to satisfy the tax liabilities in the event that it is successful on its alter ego or successor-in-interest theories.

2.      Merits of Claims and Sufficiency of Complaint

CVIS and Instant Services

Pursuant to 26 U.S.C. § 7402(a), the United States can bring an action to obtain a judgment to enforce the internal revenue laws. In the SAC, the United States has identified the tax assessments at issue and has alleged that CVIS and Instant Services have neglected, refused or failed to pay the assessments despite proper notice. SAC ¶¶ 105-06, 108, 164-67, 169-72.

Additionally, the assessments made against CVIS and Instant Services are supported by Certificates of Assessments and Payment (Form 4340) submitted by the United States in support of its motion. Form 4340s are an appropriate means of establishing that assessments were properly made and that notices and demand for payment were sent. Koff v. United States, 3 F.3d 1297, 1298 (9th Cir. 1993). The United States also has submitted evidence showing the calculation of accrued statutory interest and showing that CVIS' federal tax liabilities calculated through December 1, 2009, total $858,794.86, and that Instant Services' federal tax liabilities calculated through December 1, 2009, total $85,007.68. Reece Dec. ¶¶ 40-60, 79-90 and Exhibits A-38 through A-51; A-75 through A-86. Neither CVIS nor Instant Services have appeared through counsel to challenge the assessments or calculations.

Washington Mutual, Beneficial, NCCS, TID and Deutsche

The Internal Revenue Code provides that after parties have been notified of the United States' action, a court shall "finally determine the merits of all claims to and liens upon the property." 26 U.S.C. § 7403(c). According to the United States, it identified Washington Mutual, Beneficial, NCCS, TID and Deutsche as potential lien holders via a public records search and seeks a determination of their purported claims to the subject properties by naming them as defendants.

By this motion, the United States asks that the Court extinguish any interest that these defendants may have in the subject properties. Washington Mutual, Beneficial, NCCS, TID and Deutsche have not responded to the complaint or the instant motion for default judgment.

3.          Money at Stake

The United States it seeks to reduce the federal tax assessments against CVIS and Instant Services to judgment.

The United States does not seek any monetary damages from Washington Mutual, Beneficial, NCCS, TID and Deutsche; rather, the United States seeks to extinguish their interest-if any-against the Vacantes only to the extent that they relate to the real property at issue in this case.

4.          Dispute concerning material facts

Based on the entry of default, the Court accepts the allegations in the complaint as true and the six defendants have not appeared to suggest a dispute. See, e.g., Elektra Entm't Group, Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D.Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").

The United States asserts that as Washington Mutual, Beneficial, NCCS, TID and Deutsche failed to answer, they have effectively disclaimed interest in the property.

The United States further asserts that there is no practical dispute regarding the tax assessments against CVIS and Instant Services because (1) most of them were the result of self-assessments by the corporations reported on filed tax returns; and (2) the remainder were based on wages the corporations reported on either a tax return or to the California EDD.

As noted, Frank Vacante sent the United States an opposition to "summary judgment" against CVIS and Instant Services. This opposition was not filed with the Court, but the United States attached it to its reply in support of default judgment. Exhibit A to Reply. The United States seeks to strike the opposition because Mr. Vacante, appearing pro se, is not an attorney and he cannot represent the corporations. See C.E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987) (a non-attorney may appear in pro per on his own behalf, but he has no

authority to appear as an attorney for others); see also Tal v. Hogan, 453 F.3d 1244, 1254-55 (10th Cir. 2006) (pro se party had no right to represent corporations in federal court).

In the opposition, Mr. Vacante appears to contend that the Vacantes are not responsible persons for CVIS. Mr. Vacante also claims that judgment against either CVIS or Instant Services "would be a Judgement [sic] against Mr. and Mrs. Vacante denying them there [sic] Constitutional Right to a jury trial Under the 7th Amendment." Opposition, p. 4. Per the United States, only if Mr. Vacante admits that he is the controlling person and alter ego of the corporations should the Court then consider allowing him to represent those interests.

The United States also attempts to refute Mr. Vacante's claim that Instant Services paid all of the taxes due. Mr. Vacante reportedly sent counsel for the United States copies of tax returns and checks partially paying some of Instant Services' liabilities. Counsel for the United States indicates that it sat down with Mr. Vacante and showed him where those checks were posted to Instant Services' accounts. The United States reports that it seeks entry of default judgment for the remaining balance, after all credits, of the unpaid taxes.

The Court finds it unnecessary to strike Mr. Vacante's papers as they have not been filed with the Court. However, the Court disregards the arguments forwarded by Mr. Vacante on behalf of Instant Services and/or CVIS as he cannot represent the corporations pro se in this action and the United States has responded to his assertions.

5.     Excusable neglect

The possibility of excusable neglect is remote where a defendant receives notice of the complaint and default judgment motion and an extended period of time has passed since the clerk entered default. Elektra, 226 F.R.D. at 393. Here, the relevant defendants received notice of both the complaint and the motion for default judgment. Defendants failed to answer the complaint and have not opposed the motion. Additionally, more than a year has passed since the Clerk entered default against Washington Mutual, Beneficial and NCCS, more than 11 months have passed since the Clerk entered default against CVIS and Instant Services, and more than 2 months have passed since the Clerk entered default against TID and Deutsche.

6. Policy favoring decision on the merits

Although there is a policy of favoring decisions on the merits, the complete failure of the defendants to respond to the complaint and default judgment motion make a decision on the merits impractical. <u>Elektra</u>, 226 F.R.D. at 393.

Based on the above, the Court finds that the <u>Eitel</u> factors weigh in favor of granting the motion for default judgment. Accordingly, the Court recommends that (1) default judgment be entered against CVIS and Instant Services for the outstanding federal tax liabilities; (2) the interests of Washington Mutual, Beneficial, NCCS, TID, and Deutsche in the subject properties be extinguished in favor of the United States in the event that it is successful in reducing to judgment any tax liabilities against Defendants Frank and Ute Vacante and/or is successful one or more of its alter ego or successor-in-interest claims; and (3) default judgment be entered against Washington Mutual, Beneficial, NCCS, TID, and Deutsche.

## **RECOMMENDATION**

It is RECOMMENDED as follows:

1. Plaintiff's motion for default judgment be GRANTED;

2. Default judgment be entered in favor of the United States and against CVIS for federal tax liabilities in the amount of $858,794.86 as of December 1, 2009, plus interest and other statutory additions, as provided by law, that accrue after December 1, 2009;

3. Default judgment be entered in favor of the United States and against Instant Services for federal tax liabilities in the amount of $85,007.68 as of December 1, 2009, plus interest and other statutory additions, as provided by law, that accrue after December 1, 2009;

4. The interests of Defendants Washington Mutual Bank, Beneficial California, Inc., Northern California Collection Service, Inc., Turlock Irrigation District and Deutsche Bank National Bank Trust Company in the subject properties should be extinguished in favor of the United States in the event that it is successful in reducing to judgment any tax liabilities against Defendants Frank

and Ute Vacante and/or is successful one or more of its alter ego or successor-in-interest claims; and

5.    Default Judgment be entered in favor of the United States and against Defendants Washington Mutual Bank, Beneficial California, Inc., Northern California Collection Service, Inc., Turlock Irrigation District and Deutsche Bank National Bank Trust Company.

These Findings and Recommendations are submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 631(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days after being served with a copy, any party may serve on opposing counsel and file with the court written objections to such proposed findings and recommendations. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1).


IT IS SO ORDERED.

**Dated:    February 8, 2010                          /s/ Dennis L. Beck**
                                                      UNITED STATES MAGISTRATE JUDGE