1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>  v.<br><br>FRANK A. VACANTE, *et al.*,<br><br>               Defendants. | 1:08-CV-01349-OWW-DLB<br><br>**MEMORANDUM DECISION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 105) AND MOTION TO DISMISS (DOC. 124); PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 119)** |

## I.   INTRODUCTION.

Plaintiff United States filed this action to reduce federal tax assessments to judgment and foreclose federal tax liens on real property on June 10, 2008.  The tax assessments at issue are against husband and wife Frank and Ute Vacante and their alleged alter egos, Central Valley Insurance Services, Inc. ("CVIS"), and Instant Services, Inc.

Before the Court for decision are several motions.  The United States moves for summary judgment against Defendants Frank Vacante and Ute Vacante, proceeding pro se, seeking to reduce to judgment individual tax liabilities for tax years 2000 and 2004.  In addition to reducing to judgment the individual tax liabilities assessed against Frank and Ute Vacante, Plaintiff moves to reduce to judgment Frank Vacante's Form 941 Employment Tax Liabilities for the tax periods ending June 30, 1993, September 30, 1993, December

1

31, 1993, March 31, 1994, June 30, 1994, September 30, 1994, and December 31, 1994;  Plaintiff also seeks to reduce to judgment Frank Vacante's Form 940 Federal Unemployment Tax ("FUTA") liabilities for the tax periods ending December 31, 1993 and December 31, 1994.

Pro se Defendants' first motion, filed on November 30, 2009, seeks entry of summary judgment on each cause of action contained in the Second Amended Complaint ("SAC").  Defendants argue that summary judgment is appropriate because they did not have the ability to pay CVIS's taxes, did not have knowledge of the past due amounts, and did not take part in the financial decisions of CVIS.

Defendants' second motion, filed on December 16, 2009, also seeks to dismiss the entire SAC on grounds that: (1) Defendants were denied their due process rights during an unidentified appeals proceeding; (2) Defendants have a binding pre-nuptial agreement; (3) Revenue Officers Randy Reese and John Certini made material misrepresentations and false statements during their investigations; and (4) IRS manager Martha Rodriguez failed to properly supervise Revenue Officers Reese and Certini.

Oral argument on these motions was held on February 26, 2010, during which Mr. Vacante requested an extension of time to file a supplemental opposition to the United States' motion.  Mr. Vacante's request was granted and the Court set a supplemental briefing schedule on the United States' summary judgment motion only.[1]  Although the parties' arguments in the original and

_____

[1] Plaintiff's supplemental briefing was filed on March 12, 2010 and the United States responded on March 22, 2010. (Docs. 145 through 153.)

**2**

supplemental briefing are largely the same, there is one important distinction:  Based on the employment tax figures provided by Mr. Vacante in his supplemental opposition, the United States reduced his Form 941 tax liabilities for the seven tax quarters in 1993 and 1994.  The government also recalculated Mr. Vacante's Form 940 tax liabilities for the 1993 and 1994 tax years.  However, the tax adjustments were limited to Mr. Vacante's employment tax liabilities, i.e., the figures did not impact or reduce the Vacantes' individual income tax liabilities for tax years 2000 and 2004.

## II.   FACTUAL BACKGROUND.[2]

This case arises out of the government's attempt to reduce to judgment certain federal tax assessments made against Frank Vacante, Ute Vacante, CVIS and Instant Services, Inc., and to foreclose federal tax liens arising from federal tax liabilities against five parcels of property owned by the Vacantes.

### A.   The Vacante's Insurance Businesses

Frank and Ute Vacante ("the Vacantes"), husband and wife have, since 1987, owned and operated a number of insurance businesses beginning in the 1980's.  (F. Vacante Dep. at 26:20-30:9, 34:5-35:24.)  In 1993 and 1994, Frank Vacante's insurance

---

[2] Defendants did not file their own separate statement of disputed facts, or admit or deny the facts set forth by the United States as undisputed.  See Local Rule 56-260(b) ("Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed [....]").

business operated as a sole proprietorship - VIF Insurance - and employed several individuals, including Ute Vacante, Cynthia Burris and Dan Belew III.  (PSUF 15, 29-33; Doc. 145, 11:2-11:3.)   In 1995, the Vacante's incorporated the insurance business as Central Valley Insurance Services, Inc.  (F. Vacante Dep. at 68:5-68:10.) The California Department of Insurance closed Central Valley Insurance Services, Inc. in 2001, at which time it was absorbed by Instant Services, Inc., an existing real estate company owned by the Vacantes.  (Id. at 70:5-70:12, 255:3-257:12.)  The Vacantes operated Instant Services, Inc. from 2001 through 2005, issuing a number of insurance policies and engaging in other financially-related transactions.[3]

Following an investigation into the Vacantes' delinquent taxes, the IRS assessed employment tax liabilities and penalties against Frank Vacante relating to VIF Insurance's outstanding payroll liabilities for seven tax periods from June 30, 1993 through December 31, 1994.  The IRS determined that Frank Vacante failed to properly assess and pay his federal employment taxes - Form 940 and 941 - based on his 1992 Form 1040 tax return, Ute Vacante's 1994 W-2 and Form 1040 tax return, the business records of CPA Daniel Burke, and the deposition testimony of Cynthia Burris and Dan Belew III.  The IRS's investigation also determined that the Vacantes failed to properly pay their individual income taxes for the 2000 and 2004 tax years.

[3] The government asserts that the Vacantes operated several additional unincorporated insurance businesses out of Instant Service's location, utilizing the same personnel and sharing the same insurance broker's license to initiate and close deals.

**4**

At oral argument on February 26, 2010, Mr. Vacante disputed these "estimated" amounts, and requested an extension of time to oppose the United States' motion.  On March 12, 2010, as part of his supplemental briefing, Mr. Vacante provided figures for wages paid to workers Dan Belew and Cynthia Burris by VIF Insurance in 1993 and 1994.  He described the payments as "commissions."  According to Mr. Vacante, Mr. Belew and Ms. Burris were paid $26,095 - $16,495 and $9,600 - in 1993.  As to the 1994 tax year, Mr. Vacante contends that the two employees were paid commissions of $17,479 (Mr. Belew) and $9,600 (Ms. Burris), for a total of $27,079.

The United States accepts Mr. Vacante's tax figures for 1993 and 1994, however, it contends that Mr. Vacante omits $75,000 in wages paid to Mrs. Vacante in 1994.  The United States contends that Mrs. Vacante signed, under penalty of perjury, a bank loan document stating that she "received $75,000 in wages from VIF insurance in 1994."  The United States also submitted VIF Insurance's W-2 for 1994, which stated that Ute Vacante received $75,000 in wages from VIF insurance in 1994.  According to the United States, the operative wage figures for the 1993 and 1994 tax years are $26,095 and $102,079.  The $26,095 and $102,079 paid in wages are the foundation for Mr. Vacante's 1993 and 1994 employment tax liabilities (Form 940 and 941).

> B.   **Form 1040 Tax Liabilities For Tax Years 2000 & 2004**
>
>> 1.   *2000 Tax Year*

In late 2006, the IRS, pursuant to 26 U.S.C. § 6020(b), assessed income tax liabilities and penalties against Frank Vacante

and Ute Vacante for the 2000 tax year.  (Doc. 120, Reece Dec. ¶ 4.)
The assessments were based on Frank and Ute Vacante's failure to
file Form 1040 Individual Tax Returns for the tax year ending
December 31, 2000.  (Id.)

On April 7, 2008, the IRS received the Vacantes' Joint Form
1040 Individual Tax Return for the tax year ending December 31,
2000.  (PSUF 1.)  The IRS accepted the Vacantes' untimely return
and abated the earlier assessments to the extent they conflicted
with the joint return.  (Reece Dec. ¶ 4.)  The only offset to the
Vacantes' 2000 tax liability was a $1.07 overpayment applied by the
IRS on March 28, 2007.  (Doc. 120, Reece Dec. ¶ 6.)

On November 16, 2009, the IRS determined that Frank and Ute
Vacante failed to make estimated income tax payments for the 2000
tax year and issued a "Form 4340, Certificate of Assessments,
Payments and Other Specified Matters for Frank A & Ute G. Vacante
for U.S. Individual Income Tax Return (Form 1040), for the tax
period ending December 31, 2000."  (Reece Dec. ¶ 6; Doc. 120-3.)
The Certificates of Assessments (known as "Form 4340s") detail the
amount in taxes the IRS believes the Vacantes owe for the 2000 tax
year, as well as any penalties, costs, and interest assessed to the
Vacantes due to their failure to make timely payments.  (Id.)  As
of December 1, 2009, the total outstanding balance of the federal
income tax liabilities due from Frank and Ute Vacante for the 2000
tax year, including interest, is $7,102.58.[4]  (Reece Dec. ¶ 26;

---

[4] According to the Form 4340, Defendants owe $6,336.38 in
income tax liabilities, penalties, and interest assessments for the
2000 tax year.  (Doc. 120-3.)  The remaining $766.20 represents
accrued, but unassessed, interest.  (Reece Dec. ¶ 26.)

Doc. 121-3.)

Defendants dispute the accuracy of the IRS assessments, arguing that their individual income tax issues were summarily resolved pursuant to a $52,064.67 check they sent to the IRS on October 29, 2004.  According to the United States, however, the $52,064.67 was used to satisfy the Vacantes' outstanding tax liabilities for the 1993-1999 and 2001 years.  It contends that the Vacantes' 2000 and 2004 tax liabilities were not satisfied by the October 29, 2004 payment.

### 2.   *2004 Tax Year*

On June 5, 2007, the IRS received the Vacantes' Joint Form 1040 Individual Tax Return for the tax year ending December 31, 2004.  (PSUF 9.)  After reviewing the joint return, the IRS determined that Frank and Ute Vacante failed to make sufficient income tax payments for the 2004 tax year; the only payments made toward Frank and Ute Vacante's individual income tax liabilities for the 2004 tax year were $1,134.00 in withholdings.  (PSUF 10-11.)

On March 11, 2008, the IRS issued a "Form 4340, Certificate of Assessments, Payments and Other Specified Matters for Frank A & Ute G. Vacante for U.S. Individual Income Tax Return (Form 1040), for the tax period ending December 31, 2004."  (Doc. 120-5.)  The Form 4340s detail the amount in taxes the IRS asserts the Vacantes owe in taxes for the 2004 tax year, as well as any penalties, costs, and interest assessed to the Vacantes due to their failure to make timely payments.  (Id.)  The assessments were based on Frank and Ute Vacante's failure to timely pay their individual income tax

liabilities and for late-filing their Form 1040 tax Return.  (PSUF 12-13.)  As of December 1, 2009, the total outstanding balance of the federal income tax liabilities due from Frank and Ute Vacante for the 2004 tax year, including interest, is $4,258.17.[5]  (Reece Dec. ¶ 27; Doc. 121-4.)

Defendants acknowledge a $2,115.00 federal tax liability for the 2004 tax year.  Nevertheless, they dispute the accuracy of their liability on grounds that the IRS "levied the Vacante's bank accounts and applied the money to items not owed by the Vacante's."  (Doc. 145, 10:21-10-:22.)  The allocation and distribution of levy payments is discussed in § V(A)(3), *infra*.

###   C.   Form 941 Tax Liabilities - Frank Vacante

IRS records indicate that Frank Vacante did not file Form 941 Employment Tax Returns for his sole proprietorship for the tax periods ending June 30, 1993, September 30, 1993, December 31, 1993, March 31, 1994, June 30, 1994, September 30, 1994, and December 31, 1994.  According to the United States, Frank Vacante employed several individuals during this time, yet failed to make federal tax deposits of withheld income and FICA tax.  Mr. Vacante, however, maintains he was not required to withhold or pay Form 941 taxes because his employees paid their own self-employment taxes during the 1993 and 1994 tax years.  He claims the employees in question were treated as "independent contractors" and paid

---

[5] According to the Form 4340, Defendants owe $3,528.44 in income tax liabilities, penalties, and interest assessments for the 2004 tax year.  (Doc. 121-4.)  The remaining $729.73 represents accrued, but unassessed, interest.  (Reece Dec. ¶ 27.)

1  "commissions."

2      Because Frank Vacante did not file Form 941 Employment Tax
3  Returns for his sole proprietorship for the 1993 and 1994 tax
4  years, the IRS calculated the employment taxes based on wages paid
5  by Frank Vacante in 1992 and other third party information.
6  However, the United States recalculated Mr. Vacante's Form 941
7  employment tax liabilities for tax year 1993 based on the
8  documentation produced by Mr. Vacante on March 12, 2010.  According
9  to the United States, the operative wage figures for the 1993 and
10 1994 tax years are $26,095 and $102,079.

11

12          1.   *1993*

13      On December 13, 2007, the IRS issued a "Form 4340, Certificate
14 of Assessments, Payments and Other Specified Matters for Frank
15 Vacante, Frank Vacante Insurance for Employer's Quarterly Federal
16 Tax Return (Form 941)," for the tax periods ending June 30, 1993,
17 September 30, 1993, and December 31, 1993.  (Docs. 120-8 to 120-
18 10.)  Because Frank Vacante failed to file Form 941 Employment Tax
19 Returns or to pay withholding taxes for his sole proprietorship for
20 the 1993 tax year, the IRS calculated the employment taxes based on
21 the wages paid by Frank Vacante in 1992.  (PSUF 17.)  However, the
22 United States recalculated Mr. Vacante's Form 941 employment tax
23 liabilities for tax year 1993 pursuant to the documentation
24 produced on March 12, 2010 (i.e., wages of $26,095).

25      As of December 1, 2009, the total outstanding balance of the
26 Form 941 tax liabilities due from Frank Vacante for the June 30,
27 1993, September 30, 1993, and December 31, 1993 tax periods,

28

          9

1    including interest, is $24,241.28.[6]  (Doc. 153-2, ¶¶ 10-13.)

2

3              **2.**  *1994*

4         On December 13, 2007, the IRS issued a "Form 4340, Certificate

5    of Assessments, Payments and Other Specified Matters for Frank

6    Vacante, Frank Vacante Insurance for Employer's Quarterly Federal

7    Tax Return (Form 941)," for the tax periods ending March 31, 1994,

8    June 30, 1994, September 30, 1994, and December 31, 1994.  (Docs.

9    120-11 to 120-14.)  Initially, because Frank Vacante failed to file

10   Form 941 Employment Tax Returns or to pay withholding taxes for his

11   sole proprietorship for the 1994 tax year, the IRS calculated the

12   Vacante's   employment   tax   liability   based   on   third   party

13   information, including the deposition testimony of Cynthia Burris

14   and Dan Belew III.  (PSUF 30-31.)  The IRS also reconstructed

15   Vacante's Form 941 liability using Ute Vacante's 1994 W-2 filing,

16   which  stated  she  was  paid  $75,000  by  Frank  Vacante's  sole

17   proprietorship.    (PSUF   29.)    However,   the   United   States

18   recalculated Mr. Vacante's Form 941 employment tax liabilities for

19   tax year 1994 pursuant to the documentation produced on March 12,

20   2010 (i.e., wages of $102,079).

21        As of December 1, 2009, the total outstanding balance of the

22   Form 941 tax liabilities due from Frank Vacante for the March 31,

23   1994, June 30, 1994, September 30, 1994, and December 31, 1994 tax

24

25

26        [6]  Specifically,  Mr.  Vacante  owes  $7,259.84  in  Form  941

27   employment taxes for the tax period ending June 30, 1993; $8,549.15
     for the tax period ending September 30, 1993; and $8,432.29 for the

28   tax period ending December 31, 1993.  (Doc. 153-2. ¶¶ 10-13.)

                                     **10**

periods, including interest, is $123,443.49.[7]  (Doc. 153-2. ¶¶ 14-18.)

D.   Form 940 FUTA Tax Liabilities - Frank Vacante

    1.   *1993 & 1994 Tax Years*

    IRS records indicate that Frank Vacante did not file a Form 940, Employer's Annual Federal Unemployment Tax Return, for the tax periods ending December 31, 1993 and December 31, 1994.  (PSUF 24, 42.)   According to the United States, Frank Vacante employed several individuals during 1993 and 1994, yet failed to make federal tax deposits of withheld FUTA taxes.  (PSUF 43.)   Mr. Vacante maintains that his employees paid their own self-employment taxes during the 1993 and 1994 tax years, therefore he did not owe Form 940 or 941 taxes.

    On December 13, 2007, the IRS issued a "Form 4340, Certificate of Assessments, Payments and Other Specified Matters for Frank Vacante, Frank Vacante Insurance, for Employer's Annual Federal Unemployment Tax Return (Form 940)," for the tax periods ending December 31, 1993 and December 31, 1994. (Docs. 121 to 121-2.) Because Frank Vacante failed to file Form 940 FUTA Returns for either 1993 or 1994, the IRS based its FUTA calculations on two sources: (1) payments to workers by Mr. Vacante in 1992, to establish Mr. Vacante's 1993 FUTA liability; and (2) payments of $111,912 paid to workers by Mr. Vacante in the tax year 1994 -

    [7]  Specifically, Mr. Vacante owes $28,615.09 in Form 941 employment taxes for the tax period ending March 31, 1994; $32,079.29 for the tax period ending June 30, 1994; $31,729.16 for the tax period ending September 30, 1993; and $31,019.95 for the tax period ending December 31, 1994.  (Doc. 153-2, ¶¶ 14-18.)

$27,987/quarter – to establish Mr. Vacante's 1994 FUTA liability. (PSUF 25, 44.) However, the United States recalculated Mr. Vacante's Form 940 tax liabilities for the 1993 and 1994 tax years pursuant to the documentation produced on March 12, 2010 (i.e., wages of $26,095 and $102,079).

As of December 1, 2009, the total outstanding balance of the Form 940 FUTA tax liability due from Frank Vacante for the December 31, 1993 tax period, including interest, is $832.71. (Doc. 153-2. ¶ 20.)   Mr. Vacante owes $3,063.85 in Form 940 FUTA taxes for the tax period ending December 31, 1994. (Doc. 153-2. ¶ 22.)

E.   Summary of Tax Liability - Government Figures

1.   *Frank Vacante*

| Type of Tax | Tax Period | Unpaid Balance of Assessments | Balance Due w/ Interest |
|---|---|---|---|
| Form 1040 | 2000 | $6,336.38 | $7,102.58 |
| Form 1040 | 2004 | $3,528.44 | $4,258.17 |
| Form 941 | 6/30/93 | $4,914.47 | $7,259.84 |
| Form 941 | 9/30/93 | $5,809.83 | $8,549.15 |
| Form 941 | 12/31/93 | $5,730.41 | $8,432.29 |
| Form 941 | 3/31/94 | $19,446.22 | $28,615.09 |
| Form 941 | 6/30/94 | $21,800.42 | $32,079.29 |
| Form 941 | 9/30/94 | $21,450.29 | $31,729.16 |
| Form 941 | 12/31/94 | $21,080.49 | $31,019.95 |
| Form 940 | 12/31/93 | $565.88 | $832.71 |
| Form 940 | 12/31/94 | $2,082.11 | $3,063.85 |

TOTAL DUE:[8] 151,581.30

---

[8] The interest and other statutory accruals were calculated on December 1, 2009 and may now be higher.   Mr. Vacante's federal

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   2.   *Ute Vacante*

| Type of Tax | Tax Period | Assessment Date | Unpaid Balance of Assessments | Balance Due w/ Interest |
|-------------|------------|-----------------|-------------------------------|-------------------------|
| Form 1040 | 2000 | 11/16/09 | $6,336.38 | $7,102.58 |
| Form 1040 | 2004 | 3/11/08 | $3,528.44 | $4,258.17 |

                              **TOTAL DUE:**[9]   **$11,360.75**


   F.   **Prior Federal Court Judgment Against Frank Vacante**

   On May 15, 2002, the United States filed an action against Frank Vacante in U.S. District Court for the Eastern District of California, Fresno Division, entitled *United States v. Frank Vacante*, No. 02-CV-5565-OWW-DLB.   The United States initiated litigation to reduce to judgment certain outstanding Form 940 and 941 tax assessments against Defendant Frank Vacante - operating his sole proprietorship as VIF Insurance - for the 1989 and 1990 tax years.   (Doc. 1.[10])   Defendant Vacante was properly served with copies of the summons and complaint, but did not respond to the complaint or otherwise appear in the action.   Mr. Vacante's default was taken on September 10, 2002.   (Doc. 9.)

   On November 14, 2002, the United States moved for default judgment against Frank Vacante in the amount of his outstanding tax

employment tax liability - stemming from unpaid Form 940 and 941 taxes - was reduced on March 22, 2010.   (See Doc. 153-1 through 153-5.)

   [9] The interest and other statutory accruals were calculated on December 1, 2009 and may now be higher.

   [10] All citations in § II(F) refer to *United States v. Frank Vacante*, No. 02-CV-5565-OWW-DLB.

**13**

1   liabilities.   (Doc. 10.)   Mr. Vacante did not oppose the motion,

2   nor did he move to set aside the entry of default.   The United

3   States' motion for default judgment against Frank Vacante was

4   granted on March 7, 2003.   (Doc. 14.)   The default judgment was

5   entered in the amount of $21,087.91, plus interest, penalties, and

6   other statutory additions.   (Doc. 128-2.[11])   The judgment remains

7   unpaid.   (Id.)

8

9                     III.   <u>PROCEDURAL BACKGROUND</u>.

10       The United States filed a complaint on June 10, 2008 to reduce

11   to judgment outstanding federal tax assessments against Frank

12   Vacante, Ute Vacante, CVIS, and Instant Services, Inc., to

13   foreclose federal tax liens arising from federal tax liabilities

14   against property owned by the Vacantes, to adjudicate that Frank

15   and Ute Vacante are alter egos of CVIS, and to establish successor-

16   in-interest liability regarding the Vacante's various insurance

17   entities.[12]   (Doc. 1.)

18       On July 21, 2008, Defendants filed their Answer to Plaintiff's

19   Complaint.

20       On September 14, 2009, Plaintiff filed the operative SAC,

21

22       [11] Citation refers to 1:08-CV-01349-OWW-DLB.

23       [12] The United States also named Pacific Bell Directory,
     Stanislaus County Tax Collector, Everett J. & Willie Jean
24   Rodrigues, Washington Mutual Bank, Beneficial California, Inc., New
     Century Mortgage Corporation, Franchise Tax Board, Union Bank of
25   California, Northern California Collection Services, Inc., Turlock
     Irrigation District, Merced County Tax Collector, Terry L. Blake
26   dba Blake Electric, and Deutsche Bank National Trust Company as
     Defendants.   According to the United States, each party "is named
27   in this action because it may claim an interest in real property
     that is subject to this action."   (Doc. 90, ¶¶ 8-20.)
28

                              **14**

advancing fifteen causes of action: (1) To Reduce to Judgement Federal Tax Assessments Relating to the Vacantes' Unincorporated Business Against Frank Vacante; (2) To Reduce to Judgement Federal Income Tax Assessments and Tax Assessments (Relating to CVIS) Made Pursuant to 26 U.S.C. § 6672 Against Frank Vacante; (3) To Reduce to Judgement Federal Tax Assessments (Relating to CVIS) Made Pursuant to 26 U.S.C. § 6672 Against Ute Vacante; (4)  To Reduce to Judgement Federal Tax Assessments Against CVIS; (5)  To Reduce to Judgement Federal Tax Assessments Against Instant Services, Inc.; (6) To Determine that CVIS is a Successor in Interest to the Vacantes' Unincorporated Business; (7)  To Determine that Instant Services, Inc. is a Successor in Interest to CVIS; (8)  To Determine that Ute Vacante is an Alter Ego of CVIS; (9)  To Determine that Ute Vacante is an Alter Ego of Instant Services, Inc.; (10) To Determine that Frank Vacante is an Alter Ego of CVIS; (11) To Determine that Frank Vacante is an Alter Ego of Instant Services, Inc.; (12) To Foreclose Federal Tax Liens Against Ute Vacante on the Lander Avenue Property; (13) To Foreclose Federal Tax Liens Against Ute Vacante on the Minaret Avenue Property; (14) To Foreclose Federal Tax Liens Against Frank Vacante on the Lupin Lane Property;  (15) To Foreclose Federal Tax Liens Against Frank and Ute Vacante on the Snedigar Road Property; and (16) To Foreclose Federal Tax Liens Against Frank and Ute Vacante on the August Avenue Property.  (Doc. 90, ¶¶ 148-201.)

On November 30, 2009, Defendants moved for summary judgment on each cause of action contained in the SAC. (Doc. 105) Defendants argue that summary judgment is appropriate because they did not have the ability to pay CVIS's taxes, did not have knowledge of the

1   past due amounts, and did not take part in the financial decisions
2   of CVIS.   Defendants, however, did not file a "Statement of
3   Undisputed Facts," as required by Rule 56-260, Local Rules of
4   Practice.

5        On December 14, 2009, the United States moved for summary
6   judgment against Defendants Frank Vacante and Ute Vacante, seeking
7   to reduce to judgment certain tax liabilities against Frank Vacante
8   and Ute Vacante.   (Doc. 119.)   In particular, the United States
9   seeks to: (1) reduce to judgment Frank and Ute Vacante's individual
10  tax liabilities for tax years 2000 and 2004;   (2)   reduce to
11  judgment Frank Vacante's Form 941 Employment Tax Liabilities for
12  the tax periods ending June 30, 1993, September 30, 1993, December
13  31, 1993, March 31, 1994, June 30, 1994, September 30, 1994, and
14  December 31, 1994;   (3)   reduce to judgment Frank Vacante's Form
15  940 Federal Unemployment Tax liabilities for the tax periods ending
16  December 31, 1993 and December 31, 1994.

17       On December 16, 2009, Defendants moved to dismiss the entire
18  SAC on grounds that: (1) Frank Vacante never signed a lease for
19  office space in Turlock on May 23, 1994; (2)   Defendants were
20  denied their due process rights during an unidentified appeals
21  proceeding; (3) Defendants have a binding pre-nuptial agreement;
22  (4) Revenue Officers Randy Reese and John Certini made material
23  misrepresentations   and   false   statements   during   their
24  investigations; and (5) IRS manager Martha Rodriguez failed to
25  properly supervise Revenue Officers Reese and Certini.   (Doc. 124.)

26       The United States filed its opposition to Defendants' summary
27  judgment motion on January 25, 2010.   (Doc. 128.)   In support of
28  its opposition, Plaintiff submitted: (1) a Memorandum opposing the

16

motion ("Memorandum"); (2) a Statement of Facts in Support of its Opposition; (3) the Declaration of G. Patrick Jennings; and (4) Certificates of Assessments for the relevant tax periods at issue in this case.  (Docs. 128-129.)

The United States opposes summary judgment on grounds that there remains a genuine issue of material fact concerning whether the Vacantes are "responsible parties" or "acted willfully" under 26 U.S.C. § 6672.  (Doc. 128.)  The United States also maintains that Defendants' "claim for damages should be denied because they have not counterclaim[ed] for such a remedy, and so their claim is not part of this suit."  (Id. at 2:11-2:13.)

On February 4, 2010, Plaintiff United States filed its "Reply and Motion to Strike Vacantes' Memorandum of Points Against Partial Summary Judgment."  (Doc. 132.)  Attached to the United States' reply was Defendants' "Memorandum of Points Against Partial Summary Judgment."  The United States explains:

> Frank Vacante sent a memorandum in opposition to the United States' Motion for Partial Summary Judgment to counsel for the United States.  This document has not appeared on ECF and does not appear to have been filed with the Court.  The mailroom at counsel's building received this document on the afternoon of Friday January 29, 2010, and counsel received this document on the morning of February 1, 2010.

(Doc. 132, 2:1-2:6.)

The United States moves to strike Defendants' "Memorandum of Points Against Partial Summary Judgment," i.e., Defendants' opposition to Plaintiff's summary judgment motion, on grounds that it does not comply with the Rule 78-230(c), Local Rules of Practice.  The issue of timeliness under Local Rule 78-230(c) is discussed in § V(A)(1), *infra*.

17

1    Defendants' "Memorandum of Points Against Partial Summary
2    Judgment," includes over 180-pages of exhibits:  (1) photocopies of
3    more than 75 cancelled checks from payor "VIF Insurance Services"
4    to payee "West America Bank;" (2) federal tax deposit slips; (3)
5    taxpayer account statements; (4) confidential IRS correspondence
6    re: overpayments and levy notices; (5) photocopies of Form 941
7    Employment Tax Returns for the tax periods ending June 30, 2001,
8    September 30, 2001, December 31, 2001, March 31, 2002, June 30,
9    2002, September 30, 2002, December 31, 2002, March 31, 2003, March
10   31, 2004, June 30, 2005, September 30, 2006; (6) photocopies of
11   Form 940 FUTA taxes for the tax periods ending December 31, 2001
12   and December 31, 2002; and (7) photocopies of Form 1040 tax
13   liabilities for the 1993, 1994, and 2000 tax periods.  (Doc. 136,
14   pgs. 1-99, to 136-2, pgs. 1-81.)  Defendants' exhibits were not
15   independently tabbed or otherwise identified.[13]

16   On February 12, 2010, the United States filed its "Opposition
17   to Frank Vacante's Motion to Dismiss," arguing that "Vacante's
18   Motion to Dismiss is a series of allegations that two IRS Officers
19   [made material misrepresentations] denying them due process."
20   (Doc. 141, 2:5-2:8.)  According to the government, because "Vacante
21   has not raised these claims in a prior proceeding [...] it is

22

23        [13] Defendants included a document entitled "Defendants
     Memorandum of Points in Opposition to Summary Judgment Against
24   Central Valley Insurance Inc. and Instant Service Inc." as part of
     Defendants' lengthy filing.  According to Defendants, "summary
25   judgment against Central Valley Insurance Inc. and (or) Instant
     Service Inc. would prejudice the proceedings against Defendants Ute
26   Vacante and Frank Vacante [...] they would be done in repairable
     [sic] harm."  Here, the United States has not moved for summary
27   judgment against either Central Valley Insurance Inc. or Instant
     Service Inc.  The document is irrelevant to the present motions.
28

1  improper to raise them now after discovery is closed."  (Id. at
2  2:13-2:15.)  The government also asserts that such claims can only
3  be raised pursuant to 26 U.S.C. § 7433, which Mr. Vacante has
4  failed to do.

5      The parties appeared before the Court on February 26, 2010 for
6  argument on the motions filed by the Vacantes and the United
7  States.  During the hearing, Mr. Vacante requested an extension of
8  time to oppose the United States' motion.  The Court granted the
9  request and continued the hearing to April 19, 2010.[14]

10     Defendants filed four documents on March 12, 2010: (1) an
11  opposition to the United States' motion for summary judgment; (2)
12  a "Points and Memorandum in Support of Summary Judgment Motion;"
13  (3) a "Points and Memorandum in Support of Motion to Dismiss [for]
14  Failure of Due Process;" and (4) a "Points and Memorandum in
15  Support of Jury Trial Motion."[15]  In their opposition, Defendants
16  acknowledged that VIF Insurance had payrolls of $42,245 in 1993 and
17  $49,248.64 in 1994.

18     The United States filed its supplemental briefing on March 22,
19  2010.[16]  The substance of the United States' supplemental briefing
20  mirrors its original filings:  Defendants' unauthenticated and
21  inadmissible evidence is insufficient to generate a genuine dispute

22

23     [14] The court also set a supplemental briefing schedule: Mr.
24  Vacante's opposition was due on or before March 12, 2010 and any
    response was due on or before March 22, 2010.  (Doc. 142.)

25     [15] Defendants filed a "Motion for Jury Trial" on December 2,
26  2009.  (Doc. 106.)  Defendants' March 12, 2010 filing is
    interpreted as a supplement to their original motion.
27
28     [16] Two of the documents were filed prior to March 22, 2010.
    (Docs. 150 & 151.)

of material fact on the issue of tax liability.  The United States also recalculated Mr. Vacante's Form 940 and 941 employment tax liabilities for the 1993 and 1994 tax years pursuant to the documentation produced on March 12, 2010.  According to the United States, there is substantial documentary evidence demonstrating the Vacantes' tax liabilities for the relevant tax periods.

## IV.   **LEGAL STANDARDS**.

### A.   **Motion For Summary Judgment/Adjudication**

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving

1   party's case." *Soremekun*, 509 F.3d at 984.

2       When a motion for summary judgment is properly made and
3   supported, the non-movant cannot defeat the motion by resting upon
4   the allegations or denials of its own pleading, rather the
5   "non-moving party must set forth, by affidavit or as otherwise
6   provided in Rule 56, 'specific facts showing that there is a
7   genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting
8   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A
9   non-movant's bald assertions or a mere scintilla of evidence in his
10  favor are both insufficient to withstand summary judgment." *FTC v.*
11  *Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).  "[A] non-movant
12  must show a genuine issue of material fact by presenting
13  *affirmative evidence* from which a jury could find in his favor."
14  *Id.* (emphasis in original). "[S]ummary judgment will not lie if [a]
15  dispute about a material fact is 'genuine,' that is, if the
16  evidence is such that a reasonable jury could return a verdict for
17  the nonmoving party." *Anderson*, 477 U.S. at 248.  In determining
18  whether a genuine dispute exists, a district court does not make
19  credibility determinations; rather, the "evidence of the non-movant
20  is to be believed, and all justifiable inferences are to be drawn
21  in his favor." *Id.* at 255.

22

23      **B.   Motion to Dismiss**

24      Under Federal Rule of Civil Procedure 12(b)(6), a motion to
25  dismiss can be made and granted when the complaint fails "to state
26  a claim upon which relief can be granted."  Dismissal under Rule
27  12(b)(6) is appropriate where the complaint lacks a cognizable
28  legal theory or sufficient facts to support a cognizable legal

1   theory.   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

2   (9th Cir. 1990).

3         To sufficiently state a claim for relief and survive a

4   12(b)(6) motion, a complaint "does not need detailed factual

5   allegations" but the "[f]actual allegations must be enough to raise

6   a right to relief above the speculative level." *Bell Atl. Corp. v.*

7   *Twombly*, 550 U.S. 544, 555 (2007).  Mere "labels and conclusions"

8   or a "formulaic recitation of the elements of a cause of action

9   will not do." *Id*.  Rather, there must be "enough facts to state a

10  claim to relief that is plausible on its face." Id. at 570. In

11  other words, "[t]o survive a motion to dismiss, a complaint must

12  contain sufficient factual matter, accepted as true, to state a

13  claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

14  --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)

15  (internal quotation marks omitted). "The plausibility standard is

16  not akin to a probability requirement, but it asks for more than a

17  sheer possibility that a defendant has acted unlawfully.  Where a

18  complaint pleads facts that are merely consistent with a

19  defendant's liability, it stops short of the line between

20  possibility and plausibility of entitlement to relief." *Id*.

21  (internal citation and quotation marks omitted).

22        In deciding whether to grant a motion to dismiss, the court

23  must accept as true all "well-pleaded factual allegations." *Iqbal*,

24  129 S.Ct. at 1950. A court is not, however, "required to accept as

25  true allegations that are merely conclusory, unwarranted deductions

26  of fact, or unreasonable inferences." *Sprewell v. Golden State*

27  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v.*

28  *Wal-Mart Stores, Inc*., --- F.3d ----, 2009 WL 1978730, at *3 (9th

                                    22

1   Cir. July 10, 2009) ("Plaintiffs' general statement that Wal-Mart
2   exercised control over their day-to-day employment is a conclusion,
3   not a factual allegation stated with any specificity.  We need not
4   accept Plaintiffs' unwarranted conclusion in reviewing a motion to
5   dismiss.").

7                           **V.   DISCUSSION.**

8           **A.   The United States' Motion**

9           The United States moves for summary judgment against Frank
10  Vacante and Ute Vacante for the assessments of unpaid income taxes
11  and penalties for the 2000 and 2004 tax years.  (Doc. 119, 2:21-
12  23.)   The United States also moves for summary judgment against
13  Frank Vacante as to: (1) his liabilities for Form 941 Employment
14  Taxes for the periods ending June 30, 1993, September 30, 1993,
15  December 31, 1993, March 31, 1994, June 30, 1994, September 30,
16  1994, and December 31, 1994; and (2) his liabilities for Form 940
17  FUTA taxes for the periods ending December 31, 1993 and December
18  31, 1994.  (Id. at 2:23-3:2.)

19          "In an action to collect federal taxes, the government bears
20  the initial burden of proof."  *In re Olshan*, 356 F.3d 1078, 1084
21  (9th Cir. 2004) (*quoting Palmer v. I.R.S.*, 116 F.3d 1309, 1312 (9th
22  Cir. 1997)).  The government's burden can be met by presenting
23  federal tax assessments.  *United States v. Stonehill*, 702 F.2d
24  1288, 1293 (9th Cir. 1983).   Certificates of Assessments and
25  Payments ("Form 4340s") are highly probative and in the absence of
26  contrary evidence, are sufficient to establish a tax assessment was
27  properly made and notice and demand for payment were sent.   *See*
28  *Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993)

("Generally, courts have held that IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed ...."); *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992) ("Official certificates, such as Form 4340, can constitute proof of the fact that the [tax] assessments were actually made.").

When supported by a minimal factual foundation, the IRS' assessments for taxes and related penalties are entitled to a presumption of correctness and the burden shifts to the taxpayer to show the assessment is incorrect. *See In re Olshan*, 356 F.3d at 1084; *Palmer*, 116 F.3d at 1312. If the taxpayer fails to rebut the presumption, the government is entitled to judgment as a matter of law. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (finding taxpayers' declaration that they did not receive notice of the tax assessment was insufficient to show a genuine issue of fact for trial where IRS presented Form 4340s.

The United States has submitted Form 4340s calculating the Vacante's tax liabilities and the related penalties for 2000 and 2004, (Docs. 120-3 & 120-5), and Frank Vacante's employer tax liabilities and related penalties for 1993 and 1994, (Docs. 120-8 to 121-2), along with Revenue Officer Randy Reece's Declaration supporting those assessments. (Dec. of R. Reece ¶¶ 4-25; Doc. 153-2, ¶¶ 10-22.) In further support of the assessments, the United States has submitted bank account records, the income tax returns for Ute and Frank Vacante (W-2 and 1040's), associated tax documents, and the deposition testimony of Frank Vacante and Cynthia Burris. (Docs. 120-2, 120-4, 120-6, 120-7, 122-2 to 122-4.) As to the subsequent adjustments, the United States submitted the declaration of IRS Agent Randy Reece and several corresponding

24

1   account transcripts.   (Doc. 133-1 to 133-7.)   Because the United

2   States' showing exceeds the minimal factual foundation necessary,

3   the assessments receive a presumption of correctness and the burden

4   of proof shifts to Frank and Ute Vacante to demonstrate any error.

5

6                    1.   *Defendants' Opposition*[17]

7        Defendants advance three arguments questioning the accuracy of

8   the United States' Form 4340s.   First, as to their Form 1040 tax

9   liabilities, Defendants assert that "[a] check was issued by

10  Fidelity National Title Co. in favor of the IRS in the amount of

11  $52,064.67 [...] [t]his amount paid 1040 taxes for 1997, 1998,

12  1999, 2000, and 2001, including all interest and penalties."   (Doc.

13  136, 1:20-1:22.)   Second, Defendants argue that their outstanding

14  individual income tax liabilities were satisfied pursuant to a levy

15  on their social security benefits.   Third, Defendants contend that

16  "[a]ll 941 and 940 taxes for 6/30/93, 9/30/93, 12/31/93, 3/31/94,

17  6/30/94, 9/30/94, 12/31/94 were paid.   Three people worked at VIF

18

19          [17]   On February 4, 2010, the United States objected to

20  Defendant's opposition brief as untimely. According to the United
    States, "[a]ny opposition to the [government's motion] had to be

21  filed with the Court by January 29, 2010 [...] as the Vacantes
    failed to file a timely opposition, they are not entitled to be

22  heard [...] at oral argument."  (Doc. 132, 2:8-2:11.)

23          Defendants' "Memorandum of Points Against Partial Summary
    Judgment," i.e., its opposition to the government's motion, was

24  filed with this Court on January 29, 2010, within the time-frame
    provided by Rule 78-230(c). (Doc. 136.) Although the document did

25  not appear on the docket until February 8, 2010, the face of the
    document reveals two information stamps - "Received" and "Filed"

26  stamps - both indicating the document was received/filed on January

27  29, 2010. (Id.)   Defendants' opposition was timely and the
    government's motion to strike is DENIED.  It is also MOOT as the

28  parties were permitted to file supplemental briefing.

                                    25

Insurance in 1993 and 1994 [...] all three paid there [sic] taxes on Form 1040, including self-employment tax, Medicare, and federal and state tax." (Doc. 136, 2:1-2:4.)  These arguments were the focus of Defendants' original and supplemental briefing.

### 2. *Form 1040 Liabilities*

Defendants' first argument is based on their belief that all outstanding 1040 tax liabilities were resolved pursuant to an October 29, 2004 check from Fidelity National Title to the IRS. According to Defendants, the $52,064.67 check satisfied all 1040 liabilities and left a surplus of $6000.00, which was not returned or otherwise explained.[18]

While the United States does not dispute that it received the $52,064.67 check in 2004, it argues that check was credited to the Vacantes' Form 1040 tax liabilities for 1993-1999 and 2001, not the 2000 or 2004 tax periods.  According to the United States, the check satisfied the liabilities for those years "in full," however, "[n]o part of the proceeds received on October 29, 2004, was [sic] posted to the year at issue in this suit." (Doc. 132, 2:18-2:22.)

To support its position, the government submitted the Vacantes' Account Transcripts for Form 1040 income tax liabilities for the relevant tax years.  The Account Transcripts indicate that the $52,064.67 check was credited to the outstanding Form 1040 tax liabilities for the 1993, 1994, 1995, 1996, 1997, 1998, 1999, and

---

[18] Defendants do not dispute that they owed and failed to pay $2,115 in federal tax income for the 2004 tax year. (See Doc. 145, at 10:21 ("The $2115 due for year 2004's 1040 is correct.").)

2001 tax periods, not against the 2000 and 2004 Form 1040 tax liabilities:[19]

| Tax Year | Liability on 10/29/04 | Amount Posted | Fully Satisfied? | Record (Doc., Pg.) |
|----------|----------------------|---------------|------------------|---------------------|
| 1993 | $6,897.38 | $6,897.38 | Yes | 133-2, 2-3 |
| 1994 | $8,879.65 | $8,879.65 | Yes | 133-2, 4-5 |
| 1995 | $6,076.52 | $6,076.52 | Yes | 133-2, 6-7 |
| 1996 | $7,549.93 | $7,549.93 | Yes | 133-2, 8-9 |
| 1997 | $10,720.41 | $10,720.41 | Yes | 133-2, 10-1 |
| 1998 | $5,950.55 | $5,950.55 | Yes | 133-2, 12-3 |
| 1999 | $3,129.30 | $3,129.30 | Yes | 133-2, 14-5 |
| 2001 | $2,860.93 | $2,860.93 | Yes | 133-2, 16-7 |

TOTALS:    <u>$52,064.67</u>    <u>$52,064.67</u>

Here, despite Defendants' argument that the $52,064.67 payment satisfied their individual income tax liabilities from 1993-1999 and 2001 - $52,064.67 - as well as their individual income tax liabilities from 2000 and 2004 - $11,360.75 -, no documentary evidence was offered to support such a claim. For example, Defendants do not produce a single document memorializing a "below market" global settlement or provide any other explanation for the disparity. Defendants' claims are merely conclusory allegations, which are insufficient to defeat the government's request for summary judgment. *See, e.g., Hanson v. United States*, 7 F.3d 137,

---

[19] The government's proffer of the Form 4340s, establishing a presumption of tax liability, and the subsequent production of the Vacante's Form 1040 Account Transcripts for the relevant tax years, constitute substantial evidence that the $52,064.67 payment did not reduce the Vacantes' Form 1040 income tax liabilities for the 2000 and 2004 tax periods.

138 (9th Cir. 1993) ("[nonmoving party] cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."). Defendants also do not contest that their 1993-1999 and 2001 individual income tax liabilities totaled $52,064.67, which matches identically with their November 29, 2004 payment. Absent evidence that Defendants' $52,064.67 payment satisfied more than $52,064.67 of tax liability or that the tax assessments were incorrect, Defendants have not met their burden for defeating the government's summary judgment motion.

At oral argument on February 26, 2010, Defendants emphasized that they "paid year 2000 taxes including interest and penalties in full on October 29, 2004." In its supplemental briefing, the United States asserted that was impossible for the proceeds to offset the Vacantes' 2000 individual tax liabilities because "no assessments existed for tax year 2000 at the time of payment [October 29, 2004]." The evidence supports the United States' position. In particular, the relevant Form 4340 shows that the first assessment against the Vacantes for tax year 2000 was made on December 25, 2006. (Doc. 120-3.) Here, because the tax liability did not exist in 2004, it was not "satisfied" pursuant to the Vacantes' October 29, 2004 check. Setting aside Defendants' own declarations/submissions, there is no evidence that the October 29, 2004 payment resolved the Vacantes' 2000 individual income tax liabilities.

That is not the end of the analysis, however. During oral argument on April 19, 2010, Defendants claimed that their supplemental briefing erased all uncertainty concerning when they filed their Form 1040 taxes for the 2000 tax year. In particular,

1   the Vacantes referred to several certified mail receipts which were
2   attached to their supplemental opposition.  (Doc. 145, pgs. 37-39.)
3   The receipts allegedly relate to their Form 1040 taxes for the 2000
4   tax year.   According to the Vacantes, these receipts demonstrate
5   that they mailed - and paid - their 2000 Form 1040 taxes in May of
6   2002.   This argument is a nonstarter.   First, Mr. Vacante fails to
7   identify the receipts or establish their origin - by declaration or
8   otherwise; there is no way to validate his claims concerning the
9   certified receipts.   In this regard, the documents are not properly
10  authenticated and are stricken from the summary judgment record.
11  *See Conkey v. United States*, 545 F. Supp. 2d 1013, 1016-17 (N.D.
12  Cal. 2008) (striking two certified mail envelopes because they were
13  not properly authenticated)*; see also Harris v. Freedom of Info.
14  Unit Drug Enforcement Admin.*, No.06-CV-0176-R, 2006 WL 3342598 at
15  *1 (N.D. Tex. Nov. 17, 2006) (striking certified mail receipts on
16  grounds that they "[we]re not properly authenticated.").

17      Even assuming the unauthenticated receipts are admissible as
18  evidence,   the   record   contradicts   the   Vacantes'   unsupported
19  assertion that these receipts are proof that they mailed their Form
20  1040 tax returns in May 2002.   As the undisputed evidence submitted
21  by the Government demonstrates, the Vacantes neither filed nor paid
22  their 2000 Form 1040 taxes in 2002; rather, they did not submit
23  their tax return until April 7, 2008.   (See Doc. 120-2 (Vacantes'
24  Form 1040 for tax year 2000, filed in April 2008); Doc. 120, ¶ 4.)
25  The Vacantes have come forward with no admissible evidence to rebut
26  this record.   There is no genuine dispute of material fact.
27  ///
28  ///

29

### 3.   *Social Security Levy Payments*

Defendants next argue that their outstanding individual income tax liabilities were satisfied pursuant to a levy on their social security benefits.   Specifically, Defendants contend that "Mrs. Vacante's Social Security was levied in the amount of $398.00 [monthly] starting in May of 2006 for period of 24 months," and "Mr. Vacante's Social Security was levied in the amount of $127.00 a month for 23 months."   (Doc. 136, 1:23-1:25.)

The United States does not dispute that it levied Defendants' social security benefits, however, it asserts that "most of the levy payments were posted to tax periods not at issue in this suit." (Doc. 132. 3:16-3:17.)   According to the declaration of IRS Agent Randy Reece, attached to the United States' February 4, 2010 reply, the IRS identified several levy payments made from the Vacantes' social security stipends in 2006 and 2007.   These levy payments, however, did not offset the tax obligations forming the substance of this litigation:[20]

> The IRS received levy payments in the amount of $398 a month, beginning in March of 2006 and ending in December of 2006 [...]
>
> On March 6, 2006, a levy payment in the amount of $398

---

[20] The government also contends that Defendants' considerable tax issues make it nearly impossible to substantiate their assertions:

> [I]t is difficult to find where particular payments were posted, as the Vacantes have at different points in time had outstanding federal tax liabilities for ten different years, outstanding trust fund recovery penalties for multiple years, and outstanding Form 941 employment tax liabilities for numerous quarters.

(Doc. 132, 3:1-3:5.)

was posted to the Form 941 employment tax liabilities of VIF Insurance for the quarter ending March 31, 1995 [...]

On April 25, 2006, and May 24, 2006, levy payments in the amount of $398 were posted to the Form 941 employment tax liabilities of VIF Insurance for the quarter ending March 31, 1993 [...]

On June 23, 2006, a levy payment in the amount of $398 was posted to the Form 1040 individual federal income tax liabilities for Ute Vacante for 1994.   When the Vacantes late-filed a Joint Income Tax Return for 1994, the IRS abated the individual assessments against Ute Vacante, and assessed federal income tax liabilities against the Vacantes jointly for 1994, per their late-filed return.   Part of the $398 levy payment covered lien fees incurred by the IRS related to Ute Vacante's 1994 federal tax liabilities.   The remainder was transferred as a credit toward the trust fund recovery penalties assessed against Ute Vacante for the tax period ending December 31, 1998 [...]

On August 3, 2006, September 3, 2006, October 3, 2006, November 3, 2006, and December 3, 2006, levy payments in the amount of $398 were posted to the Form 941 employment tax liabilities of VIF Insurance for the quarter ending March 31, 1993 [...]

The IRS received levy payments in the amount of $409 each month beginning in January of 2007 and ending in May of 2007 [...]

On January 3, 2007, January 25, 2007, February 21, 2007, March 26, 2007, and April 25, 2007, levy payments in the amount of $409 were posted to the Form 941 employment tax liabilities of VIF Insurance for the quarter ending March 31, 1993 [...]

On May 23, 2007, a levy payment in the amount of $409 was posted to the Form 941 employment tax liabilities of VIF Insurance for the quarter ending June 30, 1993 [...]

On December 26, 2007, the IRS received a levy payment in the amount of $1309.05.   On January 24, 2007, and on February 28, 2007, the IRS received levy payments in the amount of $134.40.   On March 28, 2007, the IRS received a levy payment in the amount of $120.30 [...] the[se] levy payments were posted to the trust fund recovery penalties assessed against Frank Vacante for the tax period ending December 31, 1998 [...]

31

**(Dec. of R. Reese, Doc. 133, ¶¶ 6-15.)**

**A graphical representation of Defendants' levy payments shows that the payments did not offset the tax obligations forming the substance of the government's motion:[21]**

| Levy Date | Amount | Posted Acct | Record |
|---|---|---|---|
| 3/6/06 | $398 | Form 941 – Qtr End 3/31/95 | Doc. 133, Ex.2 |
| 4/25/06 | $398 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 5/24/06 | $398 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 6/23/06 | $398 | Form 1040 – U. Vacante ('94) & Trust Fund Penalty | Doc. 133, Ex. 4 |
| 8/3/06 | $398 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 9/3/06 | $398 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 10/3/06 | $398 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 11/3/06 | $398 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 12/3/06 | $398 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 1/3/07 | $409 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 1/25/07 | $409 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 2/21/07 | $409 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 3/26/07 | $409 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 4/25/07 | $409 | Form 941 – Qtr End 3/31/93 | Doc. 133, Ex. 3 |
| 5/23/07 | $409 | Form 941 – Qtr End 6/30/93 | Doc. 133, Ex. 5 |
| 12/27/06 | $130 | Trust Fund Penalty – F. Vacante (Qtr End 12/31/98) | Doc. 133, Ex. 6 |
| 1/24/07 | $134 | Trust Fund Penalty – F. Vacante (Qtr End 12/31/98) | Doc. 133, Ex. 6 |
| 2/28/07 | $134 | Trust Fund Penalty – F. | Doc. 133, Ex. 6 |

---

[21] Chart produced from data contained in Docs. 133-2 to 133-7.

| | | Vacante (Qtr End 12/31/98) | |
|---|---|---|---|
| 3/28/07 | $120 | Trust Fund Penalty – F. Vacante (Qtr End 12/31/98) | Doc. 133, Ex. 6 |

Similar to § V(A)(1), the United States provides substantial evidence establishing that the levy payments were used to offset *other* federal tax liabilities of the Defendants, not the liabilities at issue in this litigation.  Defendants, in contrast, provide only two documents supporting their litigation position: (1) an October 11, 2004 letter from the IRS to "Instant Services, Inc." describing a $52.84 Form 940 tax liability stemming from 2003 tax year, (Doc. 136, pgs. 82-83); and (2) a June 13, 2005 letter from the IRS to "Instant Services, Inc." outlining a $17,092.11 Form 941 tax arrearage stemming from the quarter ending December 31, 2001.  (Doc. 136-2, pgs. 61-63.)

Neither document is relevant to the issues presented by the government's motion.  The two letters relate to Form 940 and 941 employment taxes levied against Instant Services, Inc. for the 2001 and 2003 tax periods.  In this regard, the letters bear little relation to the issues raised in the United States' motion - i.e., Form 940 and Form 941 employment taxes levied against Frank Vacante's sole proprietorship for the 1993 and 1994 tax periods. Defendants continue to conflate and confuse the issues raised in the Second Amended Complaint with those raised by the government's motion for summary judgment.  They are not identical.  Defendants' evidence is insufficient to rebut the presumption of correctness

33

arising from the Form 4340s submitted by the government.[22]

### 4.   *Form 940 and 941 Employment Taxes*

Mr. Vacante argues that the government unfairly and without proper documentation assessed employment taxes against VIF Insurance for the 1993 and 1994 tax years.  He asserts that he owes no employment tax for the years at issue because the monies Ute Vacante, Dan Belew, and Cynthia Burris received from VIF Insurance during those years did not constitute wages or income.  Instead, the employees in question were treated as "independent contractors" and paid "commissions."  The government responds to this argument by observing that the taxpayer bears the burden of persuasion in this litigation.  It also contends that, despite Mr. Vacante's self-serving declaration, there exists adequate competent evidence to support the assessments in question.

To determine whether a factual dispute exists as to Mr. Vacante's employment tax liabilities, it is necessary to harmonize the arguments advanced - and evidence presented - by the parties during the two stages of briefing.  In his original opposition, Mr. Vacante did not submit a signed declaration, relying instead on unsigned tax returns and various bank records.  Mr. Vacante

---

[22] The same reasoning applies to the documents submitted by Defendants on March 11, 2010.  To oppose the government's motion, Defendants submit: (1) photocopies of Form 1040 tax liabilities for the 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000 and 2001 tax periods; (2) Frank and Ute Vacante's 1987 pre-marital agreement; and (3) a "Notice a Federal Tax Lien."  It is unclear how these documents demonstrate that Defendants' outstanding tax liabilities were satisfied pursuant to a levy on their social security benefits.

asserted VIF Insurance employees paid their own federal employment taxes during these two tax years, therefore any assessments against Defendants for this period were meritless:

> All 941 and 940 taxes for 6/30/93, 9/30/93, 12/31/93, 3/31/94, 6/30/94, 9/30/94, 12/31/94 were paid.  Three people worked at VIF Insurance in 1993 and 1994.  Dan Belew III, Ute Vacante, and Cynthia (Nunes) Burris. All three paid there (sic) taxes on Form 1040, including self employment tax, Medicare, and federal and state tax.  The total payroll for VIF Insurance for 1993 was $42,245.00 and 1994 was $49,248.64.  The figures used by the Plaintiff are completely without foundation.  After 10 years the United States has only produced three people who worked at VIF.

(Doc. 136, 2:1-2:4.)

The government responded with a number of evidentiary objections.  According to the government, Mr. Vacante did not produce evidence or the possibility that he can produce evidence sufficient to overcome the presumption that the tax assessments levied by the IRS are correct.  Specifically, as to Cynthia Burris, the government contended that "[t]he Vacantes did not include any evidence that Cynthia (Nunes) Burris paid self-employment taxes." (Doc. 132, 4:14-4:15.)  The government correctly cited *Rivera v. National R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003) for the proposition that an unsupported assertion of self-payment does not create a genuine dispute of fact.

As to Dan Belew III, the government argued that unauthenticated and unsigned tax returns do not demonstrate that the assessment was incorrect:

> The Vacantes included with their memorandum copies of Form 1040 Tax Returns that they claim are the tax returns of Dan Belew, III.  However, these returns are not signed, and the Vacantes have no evidence that they are authentic or filed with the IRS.  Furthermore the Vacantes have submitted no evidence that Dan

35

Belew, III ever paid any self-employment tax.

(Doc. 132, 4:15-4:19.)

The government similarly objects to the use of Frank and Ute Vacante's Form 1040 tax returns to rebut the presumption of correctness:

> The Vacantes included purported Form 1040 Tax Returns for Frank and Ute Vacante for 1993 and 1994, but these returns are unsigned and the Vacantes have submitted no evidence that they are authentic.

(Doc. 132, 4:20-4:22.)

The government's evidentiary objections are well-taken. In this Circuit, unauthenticated and unsigned tax returns are insufficient to place any material fact in controversy. *See Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) ("Rule 56(e) of the Federal Rules of Civil Procedure requires that a proper foundation be laid for evidence considered on summary judgment. The documents must be authenticated [....]")*; see also Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) ("Conclusory allegations [...] without factual support, are insufficient to defeat summary judgment.")*; Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994) *(*"We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."). Courts require the party claiming error to affirmatively produce evidence demonstrating that the assessment was incorrect, which Mr. Vacante did not do in his original opposition.

However, during oral argument on February 26, 2010, the Court instructed Mr. Vacante on the relevant legal standards, namely

Federal Rule of Civil Procedure 56(e).  Mr. Vacante requested an extension of time to file supplemental briefing, which was granted. As part of his supplemental briefing, Mr. Vacante did not submit a formal declaration, but his supplemental opposition to the motion for summary judgment, construed with the leniency typically afforded pro se parties in complying with procedural requirements, *see Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996), satisfies the requirements.  In his declaration, which was signed under penalty of perjury, Mr. Vacante denies that VIF Insurance had the financial capacity to "employ" three individuals during the relevant tax years – and that the individuals were "independent contractors." He also asserts that the IRS' employment tax figures were incorrectly based on Central Valley Insurance Services, not VIF Insurance:

> 1.  Frank Vacante owned and operated VIF Insurance services as his sole proprietorship and sole property from 1983-1994.
>
> 2.  Frank Vacante notified the IRS on January 3, 1993 that he no longer had employees.
>
> 3.  No payroll tax was due from Frank Vacante or VIF Insurance during the periods 3/31/93, 6/30/93, 9/30/93, 12/31/93, 3/31/94, 6/30/94, 9/30/94 or 12/31/94.
>
> 4.  VIF's business was 95% high risk auto insurance.
>
> 5.  In November 1989, the people of California passed Prop 103, the California Insurance Initiative.
>
> 6.  Prop 103 limited how insurance companies rated policies, restricted profit and dictated rate reductions of 10%.
>
> 7.  Many of the insurance companies VIF represented were working with a 10-15% margin at the time.  It was not feasible to comply with the new laws so a majority of the companies withdrew from the California market.  Many of the remaining companies placed a moratorium on new business.  VIF insurance

went from representing greater than 100 insurance companies to fewer than 10 in a matter of months.

8.   VIF Insurance Services went from selling approximately 90-100 new policies per month in 1989, to less than 15-25 per month by 1993.

9.   Due to changes in billing practices by the insurance companies, VIF's residual income fell sharply from 1990-1994. These billing practices were designed to cancel policies.

10.  Due to the reduction of business and clientele, VIF Insurance did not need an office staff.

11.  All day to day business was handled by Mr. & Mrs. Vacante after January 1993.

12.  All direct sales were handled by Dan Belew and Cynthia Nunes. Both were licensed agents and appointed by the insurance companies being represented. This is mandated by the California Department of Insurance and is an industry standard practice for direct sales.

13.  The total payroll for VIF Insurance Services in 1993 was $42,245.

     A.   Frank Vacante and Ute Vacante received $16,150 and paid all taxes due, including federal income tax, social security tax, self employment tax and Medicare on Form 1040.

     B.   Dan Belew III received $16,495 as commission reported on form 1099 to the IRS. Mr. Belew III paid all the tax due including federal income tax, social security tax, self employment tax and Medicare on his Form 1040.

     C.   Cynthia Nunes received $9,600 as commission reported on form 1099 to the IRS. Ms. Nunes (Burris) has testified under oath during deposition in this matter that she paid all federal income tax, social security tax, self employment tax and Medicare tax due on her Form 1040.

14.  The total payroll for VIF Insurance Services in 1994 was $49,248.

     A.   Frank Vacante and Ute Vacante received $22,170 and paid all taxes due, including federal income tax, social security tax, self employment tax and Medicare on Form 1040 for the year 1994.

38

> > B. Dan Belew III received $17,478.64 as commission
> > reported on form 1099 to the IRS.   Mr. Belew
> > III paid all the tax due including federal
> > income tax, social security tax, self
> > employment tax and Medicare on his Form 1040.
>
> > C. Cynthia Nunes received $9,600 as commission
> > reported on form 1099 to the IRS.   Ms. Nunes
> > (Burris) has testified under oath during
> > deposition in this matter that she paid all
> > federal income tax, social security tax, self
> > employment tax and Medicare tax due on her Form
> > 1040 [...]
>
> 2[]. Forms 940 and 941 filed by the IRS are not based on
> interview or investigation for the tax periods
> 3/31/94, 6/30/94, 9/30/94 or 12/31/94.   Assessments
> for these periods are incorrectly based on Forms 940
> and 941 filed by the IRS on a different business.
> Central Valley Insurance Services was the sole
> proprietorship of Dan Belew III [...]

(Doc. 145, 11:2-12:26, 14:1-14:6.)

The government responds that Mr. Vacante has still offered nothing to counter the evidence provided by the government, i.e., the Form 4340s are sufficient to establish that the tax assessments were correctly made.   The government also objects to Mr. Vacante's evidence on grounds that it is unauthenticated, contains hearsay, and was not made on the basis of his personal knowledge.   The government is correct;   unauthenticated and unsigned tax returns are inadmissible to establish a genuine issue of material fact. *See Bias*, 508 F.3d at 1224.   The same is true as to documents containing hearsay and statements lacking personal knowledge.

Despite these evidentiary objections, Mr. Vacante has submitted sufficient evidence to make out a triable issue as to whether, in 1993 and 1994, Ute Vacante, Dan Belew and Cynthia Burris were treated as independent contractors.   Here, there are two conflicting interpretations on whether the workers at issue were "independent contractors" or "employees."   Mr. Vacante

39

declares that the individuals were paid "commissions," did not have specific job responsibilities or work functions, and operated largely outside a manager or "boss."   (Doc. 145 at 11:2-14:6.) Additionally, it is undisputed that Mr. Vacante paid self-employment tax on his VIF Insurance income in 1993 and 1994, and that Ms. Burris reported $764.00 in self-employment tax in 1994. (Doc. 153, 4:22-4:25, 9:3-9:4.)   Mr. Vacante also communicated to the IRS in 1993 that he did not have any "employees" and, according to his declaration, reconfigured his office structure based on dialogue with an IRS Agent.   (Doc. 145, pg. 43; Doc. 145, 12:15-13:5.)   All of these facts weigh in favor of independent contractor status.

This is contrary to the government's characterization of individuals working at VIF Insurance during the relevant time periods.   Initially, the government assessed employment tax liabilities against Mr. Vacante based on wages paid by him in 1992, the deposition testimony of Cynthia Burris, and Ute Vacante's 1994 W-2 filing, which stated she was paid $75,000 by VIF insurance. However, the United States reduced Mr. Vacante's Form 940 and 941 tax liabilities for 1993 and 1994 based on figures he provided on March 12, 2010, where he describes the payments as "commissions."[23] Because Mr. Vacante's wage figures - the "commissions" - were accepted by the government, it is unclear if the original assessments still provide the foundation for the government's

_____

[23]   Doc. 145 at 12:6-12:7 ("Dan Belew III received $16,495 as _commission_ [].") (emphasis added).

argument.[24]

Even assuming the original assessments provide the basis for the government's characterization, there is a triable issue as to whether Mr. Vacante treated Ute Vacante, Dan Belew, and Cynthia Burris as employees for tax purposes in 1993 in 1994. With respect to Ms. Burris' deposition testimony, it is an insufficient basis to resolve the issue of employee vs. independent contractor status. In her deposition, Ms. Burris does not clearly describe her duties, whether she invested in the insurance business or the generation of insurance leads, the level of professionalism required, or any number of circumstances relevant to whether an individual is an "employee" or an "independent contractor" for federal tax purposes. *See United States v. Porter*, 569 F. Supp. 2d 862 (S.D. Iowa 2008) (analyzing the twenty factors to consider when examining whether sufficient control existed to establish an employer-employee relationship). There is also record evidence that Ms. Burris considered herself to be an independent contractor, not an employee. (Doc. 153, 9:3-9:4 ("Th[e] [tax] return filed by Ms. Burris [in 1994] reported $764 in self-employment tax [....]".)

The same reasoning applies to the government's reliance on the wages paid by VIF Insurance in 1992 and the $75,000 in wages allegedly paid to Ute Vacante in 1994. First, the government's

---

[24] As to the nature of the employees' employment relationship, the government's motion lacks a fully developed factual record. *See, e.g., Porter*, 569 F. Supp. 2d at 872-74; *see also Greco v. United States*, 380 F. Supp. 2d 598, 608-16 (M.D. Pa. 2005). The facts submitted by the government concerning the Vacantes' § 6672 liability do not provide a complete picture of the employment relationship.

reliance on 1992 figures is contradicted by Mr. Vacante's declaration, in which he explains how the insurance business contracted following intense regulation.   This added cost and regulatory oversight resulted in a severe reduction in VIF's workforce in 1993.   Second, Mr. Vacante explained during February 26th's oral argument that he forged his wife's signature to obtain a bank loan.   According to Mr. Vacante, he misrepresented to the bank that Ute Vacante made $75,000 in 1994 in order to invest in his insurance business and "get back on his feet."   Contrary to the government's assertions, forging a signature is not dispositive of the independent contractor vs. employee issue, which is "factually intensive."   *See Peno Trucking, Inc. v. C.I.R.*, 296 F. App'x 449 at *6 (6th Cir. 2008) ("It is settled that each [independent contractor vs. employee] case must stand on its own facts, in light of all the existing circumstances, and that no one facet of the relationship is generally determinative.") (citation omitted). Moreover, the credibility of a witness is an issue for the jury. *See, e.g.*, *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 714 (9th Cir. 2003).   Whether Mrs. Vacante did not have $75,000 in income is a disputed fact issue based on Mr. Vacante's assertion that he fabricated this amount to obtain a bank loan to save his business.

In an abundance of caution and in light of Mr. Vacante's pro se status, viewing the evidence in a light most favorable to him, there is a question of fact concerning whether Mr. Vacante treated his employees as independent contractors during the relevant tax periods.   According to Mr. Vacante, the employees in question were

42

1  treated as independent contractors and paid commissions.[25]   **If**
2  **believed, a dispute exists whether Mr. Vacante's workers were**
3  **independent contractors during the relevant tax periods.  Trial is**
4  **necessary to resolve factual issues surrounding the nature of the**
5  **employees' working relationship and the level of investments made**
6  **by these individuals.**[26]   **The government's summary judgment motion**
7  **is DENIED on this issue.**

8       **A factual dispute exists whether and to what extent Mr.**
9  **Vacante treated Ute Vacante, Dan Belew and/or Cynthia Burris as**
10 **employees or independent contractors.  Defendants are pro se and**
11 **appear to be unfamiliar with the Federal Rules of Evidence, and**
12 **what constitutes admissible evidence under those rules.    In**
13 **preparing for trial, Defendants must become familiar with the**

14

15      [25]    There is record evidence to support Mr. Vacante's
16 declaration.  <u>See</u> § V(A)(4), *infra*.

17      [26] The Court notes the responsive burden for a party in a tax
18 case, *see, e.g., Greco v. United States*, 380 F. Supp. 2d 598 (M.D.
   Pa. 2005), and that an employer's self-serving characterization of
19 a worker does not dictate the status of the worker. *See generally
   Seattle Opera v. N.L.R.B.*, 292 F.3d 757, 764 n. 8 (D.C. Cir. 2002)
20 (noting that "if an employer could confer independent contractor
   [i.e., non-employee] status through the absence of payroll
21 deductions there would be few employees falling under the
   protection of the Act."); *see also State Farm Fire & Cas. Co. v.
22 Luciano's Landscaping Service, Inc.*, No. 97-2132, 1998 WL 103376 at
23 * 3 (E.D. Pa. Feb. 24 ,1998) ("It would be both illogical, and quite
   possibly against public policy, to allow an employer's self-serving
24 characterization of a worker to dictate the status of that worker
   [...] [i]f such were the case, all an employer would have to do is
25 label his workers 'casuals' or 'independent contractors' or some
   other handy euphemism, and by that simple act the employer could
26 escape expenses for [all employer taxes]."). Although a close
27 call, taking the evidence in Mr. Vacante's favor, there is a
   question of fact concerning whether Mr. Vacante treated his
28 employees as independent contractors.

43

Federal Rules of Evidence, the Federal Rules of Civil Procedure, and the Rules of the United States District Court for the Eastern District of California ("Local Rules").[27]

### 5.  *Conclusion on the United States' Motion*

After viewing the entirety of the evidence in the Vacantes' favor, drawing all inferences in their favor, the Vacantes' evidence does not raise a genuine issue of fact on the issue of Form 1040 income tax liabilities for the 2000 and 2004 tax years. Summary judgment is GRANTED in favor of the United States on this issue.[28]

However, as to employment tax, Mr. Vacante has created a genuine dispute as to whether he treated his employees as independent contractors during the relevant tax periods.  This issue must be determined by the trier of fact.  The United States' motion is DENIED as to Mr. Vacante's employment tax liabilities -

---

[27] The Federal Rules of Civil Procedure are available at: http://www.law.cornell.edu/rules/frcp/.   The Federal Rules of Evidence are available at: http://www.law.cornell.edu/rules/fre/. A copy of the Court's Local Rules may be obtained from the Clerk's Office.

[28] Pursuant to 26 U.S.C. §§ 6601(a) and (e)(2)(A), 6621, and 6622, the United States is entitled to statutory interest on income taxes and associated penalties imposed as of the date of notice and demand, which accrues daily until paid in full. *See Purcell v. United States*, 1 F.3d 932, 943 (9th Cir. 1993).   Once a court validates a tax assessment, awarding statutory interest is mandatory. *See id.* (noting that § 6601(e)(2)(A) is a "binding statutory directive" to award interest).   Thus, the Court GRANTS summary judgment with respect to the statutory interest on the tax assessments and penalties described above and ORDERS that judgment be entered against Frank Vacante and Ute Vacante for those income tax liabilities and associated penalties plus statutory interest.

1   Forms 940 and 941 – for the 1993 and 1994 tax years.

2

3         **B.   Defendants' Motion for Summary Judgment**

4         Defendants move for summary judgment, arguing that they did

5   not have the requisite control over CVIS's finances and employees

6   to hold them liable.  According to Defendants, the deposition

7   transcripts of Mariela Perez, Dan Belew III, and Ira White

8   demonstrate that they did not have the ability to pay CVIS's taxes,

9   did not have knowledge of the past due amounts, and did not take

10  part in the financial decisions of CVIS.[29]  Defendants, however, do

11  not attach the deposition transcripts of Mrs. Perez, Mr. Belew, or

12  Mr. White; they also do not attach a separate statement of

13  undisputed facts as required by Local Rule 56-260.[30]

14        The government primarily opposes Defendants' motion on grounds

15  that it is unintelligible and does not comply with Local Rule 56-

16

17

18  _____

19        [29] Defendants also allege that the "Revenue Officer John

20  Certini made with malice false and misleading statements," leading
    "Defendants [to] los[e] over one million dollars [...] and seven

21  hundred thousand dollars in income."    (Doc. 105, 4:3-4:14.)
    Defendants also include a prayer for "attorney's fees [and]

22  damages."  (Id. at 4:21.)  The United States maintains that the
    "claim for damages should be denied because [Defendants] have not

23  counterclaim[ed] for such a remedy, and so their claim is not part
    of this suit."  (Doc. 128, 2:11-2:13.)  The government is correct.

24  Here, Defendants have yet to raise an affirmative cause of action
    against the United States.  To the extent Defendants' motion raises

25  affirmative claims, the motion is DENIED.

26
          [30] Defendants' filing consists of a single four-page document,

27  which, as best understood, challenges the government's attempt to
    collect employment taxes from Central Valley Insurance Services,

28  Inc., one of the entities owned by Defendants.

                                  **45**

1  260.[31]   The government also maintains that there remains genuine
2  issues of material fact concerning whether Defendants are
3  "responsible parties" or "acted willfully" under 26 U.S.C. § 6672,
4  the likely subjects of Defendants' motion.

5       Local Rule of Civil Procedure 56-260(a) provides, in part,
6  that summary judgment motions shall be accompanied by "a statement
7  of undisputed facts that shall enumerate discretely each of the
8  specific material facts relied upon in support of the motion."
9  E.D. Cal. R. 56-260(a).   That rule also provides that the movant
10 shall "cite the particular portions of any pleading, affidavit,
11 deposition, interrogatory answer, admission, or other document
12 relied upon to establish that fact."   *Id*.   Defendants' motion
13 neither includes nor is accompanied by a separate statement of
14 material facts.   Since Defendants carry the burden of setting forth
15 facts that establish a genuine issue of material fact, their
16 failure to present those facts is fatal to their motion for summary
17 judgment.   The motion fails to comply with the requirements of
18 Local Rule 56-260(a) and is DENIED.

19      Assuming, *arguendo*, that Defendants' motion was properly
20 supported, there remains a genuine issue of material fact
21 concerning whether the Vacantes are "responsible parties" or "acted
22 willfully" under 26 U.S.C. § 6672.   In their motion, Defendants
23 argue that the "deposition testimony [of several former employees]

24

25      [31] Defendants' moving papers are severely lacking. Defendants
26 fail to identify a subject(s) - or claim(s) - targeted by their
   motion and do not include a memorandum of points and authorities,
27 a separate statement of undisputed facts, or supporting exhibits.
   In this regard the motion does not comply with Rule of Civil
28 Procedure 7(b).

clearly shows that Defendants did not have the ability to pay over taxes of Central Valley Insurance, Inc." (Doc. 105, 1:17-1:19.) As best understood, this argument corresponds to the government's tax assessments against the Vacantes pursuant to 26 U.S.C. § 6672 and, to a lesser degree, to the claim that the Vacantes are directly liable for the taxes of CVIS based on an alter ego theory.

The Internal Revenue Code requires employers to withhold federal social security and individual income taxes from the wages of their employees. *See* 26 U.S.C. §§ 3102(a), 3402(a). Although an employer collects this money each salary period, payment to the federal government takes place on a quarterly basis. In the interim, the employer holds the collected taxes in "a special fund in trust for the United States." 26 U.S.C. § 7501(a). These taxes are known as "trust fund taxes." *See Slodov v. United States*, 436 U.S. 238, 243 (1978).

If an employer fails to pay over collected trust fund taxes, "the officers or employees of the employer responsible for effectuating the collection and payment of trust fund taxes who willfully fail to do so are made personally liable for a 'penalty' equal to the amount of the delinquent taxes" under 26 U.S.C. § 6672. *Slodov*, 436 U.S. at 244-45. Section 6672 provides, in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax ... not collected, or not accounted for and paid over.

26 U.S.C. § 6672.

47

1   For the purposes of § 6672, a "person" includes "an officer or
2   employee of a corporation ... who ... is under a duty to perform
3   the act in respect of which the violation occurs." 26 U.S.C. §
4   6671(b). Thus, an individual is liable for a penalty under Section
5   6672 if (1) he is a "responsible person"; and (2) if he acts
6   willfully in failing to collect or pay over the withheld taxes.
7   *Davis v. United States*, 961 F.2d 867, 869-70 (9th Cir. 1992).[32]

8

9             1.   *Responsible Person*

10   The Ninth Circuit has consistently identified persons who have
11   "the final word as to what bills should or should not be paid, and
12   when" as "responsible" persons under § 6672. *Purcell v. United*
13   *States*, 1 F.3d 932, 936 (9th Cir. 1993). A person has the final
14   word if that person had "the authority required to exercise
15   significant control over the corporation's financial affairs,
16   regardless of whether he exercised such control in fact." *Purcell*,
17   1 F.3d at 937. In other words, responsibility is a matter of
18   status, duty, and authority, not knowledge. *Davis*, 961 F.2d at 873
19   (upholding the trial court's finding of "responsible person" based
20   on the plaintiff's position as the president, member of the board,
21   and major shareholder, even though the plaintiff had no knowledge
22   of the tax default). "Authority turns on the scope and nature of
23   an individual's power to determine how the corporation conducts its
24   financial affairs; the duty to ensure that withheld employment

25

26   [32] Defendants appear to argue that they cannot be held liable
    pursuant to § 6672 because they were not responsible persons and
27   did not willfully fail to pay the delinquent trust fund taxes.
    (Doc. 105, 1:17-4:2.) The government disagrees, arguing there are
28   factual disputes as to the Vacantes' culpability under § 6672.

taxes are paid over flows from the authority that enables one to do so." *Purcell*, 1 F.3d at 936.

In the absence of an admission of responsibility, there are various factors which are indicative of significant control. These factors include "the individual's duties as outlined in the corporate bylaws, his ability to sign checks, his status as an officer or director, and whether he could hire and fire employees." *Hochstein v. United States*, 900 F.2d 543, 547 (2nd Cir. 1990); *see Jones*, 33 F.3d at 1140 (approving use of the Hochstein factors). Other courts have identified additional factors, such as whether the individual held stock in the corporation and whether the individual's signature is on the employer's federal quarterly and other tax returns. *Greenberg v. United States*, 46 F.3d 239, 243 (3rd Cir. 1994).

The United States has submitted evidence that Defendants were owners of CVIS during the relevant tax periods, had sizeable entrepreneurial interests in the company, had check signing authority, controlled the financial affairs of the company, and were CVIS's only corporate officers. (United States' Statement of Facts in Support of Opposition to Motion for Summary Judgment, Doc. 128-2, No. 4, 9.)  There is also evidence in the record that Frank Vacante had the authority to hire and fire employees, which he exercised on a number of occasions. (Id. at 7, 10.)  Ute Vacante also had explicit signature authority over CVIS's bank accounts. (Id.)

Significantly, Defendants do not offer any *evidence* that they lacked the authority to pay CVIS's taxes. *See Alsheskie v. United States*, 31 F.3d 837, 839 (9th Cir. 1994) (distinguishing the

district court's finding that the plaintiff was not a responsible party from a case where "the record contained no evidence that ... the responsible party was without authority to pay the taxes."). Defendants' arguments regarding their responsibility focus almost entirely on the delegation of responsibility to Ute Vacante's son, Dan Belew III.  This argument is not well-taken.  It is well-established that the duty to ensure that withholding taxes are collected and paid over to the government is nondelegable.  *See Purcell*, 1 F.3d at 936 (responsibility to pay taxes cannot be delegated); *Keller v. United States*, 46 F.3d 851, 854 (8th Cir. 1995)("an otherwise responsible person does not avoid liability under section 6672 by delegating his authority to another."); *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir. 1989) ("delegation will not relieve one of responsibility; liability attaches to all those under the duty set forth in the statute.").

The evidence introduced by the parties on the question of responsibility is conflicting and susceptible of at least two reasonable interpretations for the tax periods at issue. Defendants' motion is DENIED as to this issue.


### 2.  *Willfulness*

In the Ninth Circuit, willfulness under § 6672 is defined as a "voluntary, conscious and intentional act to prefer other creditors over the United States." *Phillips v. United States*, 73 F.3d 939, 942 (9th Cir. 1996) (quoting *Klotz v. United States*, 602 F.2d 920, 923 (9th Cir. 1979)).  The Ninth Circuit holds that "[i]f a responsible person knows that withholding taxes are delinquent, and uses corporate funds to pay other expenses..., our precedents

1   require that the failure to pay withholding taxes be deemed
2   'willful.'"  *Buffalow v. United States*, 109 F.3d 570, 573 (9th Cir.
3   1997) (quoting *Phillips*, 73 F.3d at 942).  The Ninth Circuit
4   recognizes two ways by which the government can establish
5   willfulness.  First, the government may show that the responsible
6   person had actual knowledge that payroll taxes were not being
7   collected or paid over, and thereafter made payment to a non-IRS
8   creditor.  Second, a responsible person may be deemed "willful" if
9   he or she acted in "reckless disregard of whether the taxes [were]
10  being paid over."  *Phillips*, 73 F.3d at 942 (stating that a
11  "responsible person" is liable under the reckless disregard
12  standard if he (1) clearly ought to have known that (2) there was
13  a grave risk that withholding taxes were not being paid and if (3)
14  he was in a position to find out for certain very easily.).

15      A review of the summary judgment evidence reveals a genuine
16  and heated dispute on the ultimate issue of whether Defendants
17  *clearly* ought to have known that there was a grave risk that
18  withholding taxes were not being paid and if she was in a position
19  to find out for certain very easily.  The government contends that
20  Frank Vacante acted with "reckless disregard" by failing to ensure
21  that CVIS's taxes were paid after learning about its tax
22  delinquency.  (Doc. 128-2, No. 2.)  To support its contention, the
23  government relies on the fact an IRS Revenue Officer contacted Mr.
24  Vacante over a dozen times to inform him of the delinquency.  (Id.)
25  In addition, Judgment was entered against Mr. Vacante in 2003
26  concerning failure to pay trust fund recovery penalties for his
27  business in 1989 and 1990.  (Id.)  According to the government, Mr.
28  Vacante avoided paying the judgment against him, "chang[ing] the

name of the business to Central Valley and set[ting] up a figurehead to conceal his interest in the business." (Doc. 128, 13:21-13:22.)

As to Ute Vacante, the government emphasizes that she was the chief financial officer of CVIS, had express signing authority, and certainly knew that the business had bounced a number of checks and was in financial distress. The government additionally points to the IRS Revenue Officer's dozen calls to the Vacantes, alerting them to the tax delinquency, and her marriage to Frank Vacante – who had previously been held liable under § 6672. These circumstances, the government argues, created a risk that CVIS was delinquent and made it incumbent upon Ute Vacante to ensure that the government was being paid before making payments to non-IRS creditors.

The government contends that this evidence creates a genuine issue of material fact as to willfulness and supports a denial of Defendants' summary judgment motion. The government is correct. A reasonable jury, considering all the evidence, could find that Frank and Ute Vacante were responsible persons and/or acted willfully as those terms are defined by § 6672. Defendants' motion for summary judgment is DENIED.

### C.   Defendants' Motion to Dismiss

Defendants filed their motion to dismiss on December 16, 2009, two days after the December 14, 2009 deadline for the filing of

1   **dispositive motions set by the Amended Scheduling Order.[33]   The**
2   **Original Scheduling Order in this case set the deadline for filing**
3   **dispositive motions on November 2, 2009.  (Doc. 66.)  On September**
4   **11, 2009, the United States moved to extend discovery and modify**
5   **the scheduling order.  (Doc. 75.)  Defendants opposed the motion,**
6   **arguing that the United States already "had over eighteen thousand**
7   **pages of documents [and] all credit card information Defendants**
8   **have or can acquire."  (Doc. 88.)  The United States' motion was**
9   **granted on September 11, 2009 and the dispositive motion deadline**
10  **was continued to December 14, 2009.  (Doc. 89.)**

11  **"Federal Rule of Civil Procedure 16 vests the district court**
12  **with early control over cases 'toward a process of judicial**
13  **management that embraces the entire pretrial phase, especially**
14  **motions and discovery.'"  *In re Arizona*, 528 F.3d 652, 657 (9th**
15  **Cir. 2009) (quoting Fed. R. Civ. P. 16 advisory committee's note,**

16

17  [33] Attached to Defendants' Motion to Dismiss are the affidavits
18  of Alice Nicastro, Dan W. Belew III, Michele Harvery, and Ira
    White.  (Doc. 124, Exhs. 1, A-D.)  Each affidavit is signed under
19  penalty of perjury and challenges the statements attributed to them
    by Revenue Officer John Certini.  For example, Mr. Belew states
20  that "the statements attributed to me in [Certini's] report to
    appeal page 13 line 38d are not true [...] I have never been
21  involved in an appeals hearing of any kind either in person or by
    phone."  An unidentified excerpt, apparently page 12 of Mr.
22  Certini's report (Bates Stamp US01035), is attached to Mr. Belew's
    affidavit:
23          He (Dan) further stated that the real owners are Frank
            and Ute Vacante (his mother and stepfather) and that
24          he was nothing but a figurehead.

25  (Doc. 124, Exh. B.)

26      The affidavits of Alive Nicastro, Michele Harvery, and Ira
27  White also challenge statements attributed to them by Mr. Certini,
    attaching the relevant excerpt to their signed affidavit.  No other
28  supporting evidence is provided.

1983 Amendment).  Courts have "broad discretion in supervising the
pretrial phase of litigation," including the authority to determine
"the preclusive effect of a pretrial order."  *Johnson v. Mammoth
Recreations, Inc.,* 975 F.2d 604, 607 (9th Cir. 1992) (quoting
*Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir.
1985)).  It is not an abuse of discretion for a court to deny or
strike a motion on the basis that it is untimely filed according to
the timetable set by the scheduling order.  *Id.* at 610.
Nevertheless, before the final pretrial conference the scheduling
order may be modified upon a showing of "good cause and with the
judge's consent."  Fed. R .Civ. P. 16(b)(4);  *see Johnson*, 975 F.2d
at 608 (noting that the deadlines set by the scheduling order
govern the action "unless modified by the court").     The Rule 16
"good cause" inquiry "primarily considers the diligence of the
party seeking the [modification of the order]."  *Johnson*, 975 F.2d
at 609.

        Defendants have not attempted to show that the pretrial
schedule could not reasonably have been met despite their
diligence.  *See id.* (quoting advisory committee notes to Rule 16).
In particular, Defendants do not provide a single reason for
failing to comply with the Rule 16 Scheduling Order in this case.
More problematic is that Defendants did not request an extension of
the December 14, 2009 deadline despite previously objecting to
Plaintiff's motion for an extension; they also filed the motion
without seeking leave of Court.  Defendants do not establish that
their failure to follow the deadlines under the Modified Scheduling
Order and Federal Rules of Civil Procedure was anything more than
inadvertence - or something more flagrant.  Plaintiff does not

1  provide a sufficient basis on which the Court may permit a late
2  filing under Rule 16.

3      Allowing Defendants' motion to dismiss, without a showing of
4  diligence or good cause, prejudices the United States and imposes
5  on the management of the Court's docket.  *See Wong,* 410 F.3d at
6  1060 ("In these days of heavy caseloads, trial courts ... set
7  schedules and establish deadlines to foster the efficient treatment
8  and resolution of cases.");  *Mammoth Recreations, Inc.*, 975 F.2d at
9  610 ("Disregard[ing] the [scheduling] order would undermine the
10 court's ability to control its docket, disrupt the agreed-upon
11 course of the litigation, and reward the indolent and the
12 cavalier.")

13     Defendants' motion to dismiss is also deficient under Rule
14 7(b) of the Federal Rules of Civil Procedure.  Rule 7(b) requires
15 that all motions filed with the court detail with sufficient
16 "particularity the grounds therefor."  The specificity requirement
17 of Rule 7(b) has generally been interpreted liberally. *See Intera*
18 *Corp. v. Henderson*, 428 F.3d 605, 613 (6th Cir. 2005); *see also Roy*
19 *v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670, 670-71 (9th
20 Cir. 1985).  However, at a minimum, it must be applied so as to
21 provide the opposing party with sufficient information to respond,
22 and the Court with sufficient information to rule on the motion.
23 *Registration Control Sys., Inc. v. Compusystems, Inc.*, 922 F.2d
24 805, 808 (Fed. Cir. 1990).  Defendants' motion does not satisfy
25 this standard.   At this time, it is not possible to reconcile
26 Defendants' unintelligible arguments with the corresponding actions
27 filed by the government.

28     In addition, as the government's opposition to Defendants'

motion to dismiss recognizes, Defendants have failed to show that they have exhausted the administrative remedies required by 26 U.S.C. § 7433(d) and 26 C.F.R. § 301.7433-1(d)-(e).  *See* 26 U.S.C. § 7433(d)(1) ("A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."); *see also* 26 C.F.R. § 301.7433-1(d)-(e) (detailing the procedures for a taxpayer to exhaust administrative remedies).  While Defendants appear to argue that they exhausted their administrative remedies by corresponding with various IRS officials, a large volume of correspondence does not equate to exhaustion of remedies.  *See id.* ("An administrative claim [...] shall be sent in writing to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides.").  Here, there is no evidence that Defendants filed any administrative claim(s) under 26 U.S.C. § 7433(d) or Treasury Regulation § 301.7433-1(e).

Defendants' motion to dismiss is untimely and does not comply with Rule 7(b) of the Federal Rules of Civil Procedure.  Defendants also fail to exhaust administrative remedies required by 26 U.S.C. § 7433(d).  The motion is DENIED and the merits are not considered.

///
///
///
///
///
///
///

56

1

## V.   CONCLUSION.

2    For the foregoing reasons:

3    (1)   The government's motion for summary judgment is GRANTED
4 in part and DENIED in part.  Defendants fail to identify any facts
5 rebutting the legitimacy of the government's Form 4340s as to the
6 2000 and 2004 tax assessments.  However, as to employment tax, a
7 factual dispute exists whether and to what extent Mr. Vacante
8 treated Ute Vacante, Dan Belew and/or Cynthia Burris as employees
9 or independent contractors.

10

11    (a)   Defendant Frank Vacante is indebted to the United
12 States for unpaid federal income tax liabilities for the tax year
13 2000 and 2004 in the amount of $11,360.75 as of December 1, 2009,
14 plus further interest and statutory additions as allowed by law;

15

16    (b)   Defendant Ute Vacante is indebted to the United
17 States for unpaid federal income tax liabilities for the tax year
18 2000 and 2004 in the amount of $11,360.75 as of December 1, 2009,
19 plus further interest and statutory additions as allowed by law;

20

21    (c)   Mr. Vacante has created a genuine dispute as to
22 whether he treated his employees as independent contractors during
23 the relevant tax periods.  This issue must be determined by the
24 trier of fact.  The United States' motion is DENIED on this issue.

25

26    (2)   Defendants' motion for summary judgment is DENIED as it
27 fails to comply with the requirements of Local Rule 56-260(a).
28 Additionally, a reasonable jury, considering all the evidence,

1  could find that Frank and Ute Vacante were responsible persons and

2  acted willfully as those terms are defined by § 6672; and

3

4       (3)   Defendants' motion to dismiss is untimely and does not

5  comply with Rule 7(b) of the Federal Rules of Civil Procedure.  The

6  motion is DENIED.

7

8       The United States shall submit a form of order consistent

9  with, and within five (5) days following electronic service of,

10  this memorandum decision.

11

12  IT IS SO ORDERED.

13  Dated:   May 20, 2010             /s/ Oliver W. Wanger
                                  UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              58