# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:08cv1349 OWW DLB |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S MOTION TO STRIKE JURY DEMAND |
| Plaintiff, | ) | |
| | ) | (Document 99) |
| v. | ) | |
| FRANK A. VACANTE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff United States of America ("Plaintiff" or "United States") filed the instant motion to strike the jury demand of Defendants Frank Vacante and Ute Vacante. The matter was heard on December 4, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Guy Jennings appeared telephonically on behalf of Plaintiff. Defendant Frank Vacante appeared telephonically in pro per.

## **BACKGROUND**

On June 10, 2008, Plaintiff filed the present complaint to: (a) reduce federal tax assessments to judgment; (b) adjudicate that Frank Vacante and Ute Vacante are alter egos of Central Valley Insurance Services, Inc. ("CVIS"), and Instant Services, Inc.; (c) adjudicate that CVIS is a successor-in-interest to the Frank and Ute Vacante insurance business and that Instant Services, Inc., is a successor-in-interest to CVIS; and (d) foreclose federal tax liens on real

property.[1]  The tax assessments at issue are against Frank and Ute Vacante and their alleged alter egos, CVIS and Instant Services, Inc.  The remaining Defendants were named because they may claim an interest in the real property that is the subject of the action.  The subject real property consists of five parcels in Turlock, Riverbank, Ceres and Hilmar, California owned by the Vacantes.  Numerous Notices of Federal Tax Liens have been filed against the properties.

Most Defendants, including the Vacantes, filed answers to the original complaint.

On September 14, 2009, Plaintiff filed a second amended complaint ("SAC").  According to the SAC, the Vacantes have operated an insurance business since at least 1987.  By November 1992, the Vacantes' unincorporated business had unpaid federal employment tax liabilities and the IRS assigned the case to a Revenue Officer for collection.  To avoid the tax liabilities, Plaintiff alleges that Frank Vacante filed an Employer's Quarterly Federal Tax Return falsely indicating that the unincorporated business no longer had employees.  Plaintiff further alleges that the Vacantes incorporated CVIS in August 1993 and transferred the assets of the unincorporated business to CVIS.  The State of California suspended the corporate charter of CVIS in April 1997, but the Vacantes continued to operate it until at least 2001.  In March 2001, the California Department of Insurance closed CVIS.  Instant Services, Inc., was incorporated in Nevada on March 23, 2001.  Plaintiff alleges that the unincorporated business, CVIS and Instant Services were all operated out of the same business location, employed the same staff, sold the same product and utilized the same phone numbers.  They were all operated under Frank Vacante's broker's license.

On March 7, 2003, this Court entered judgment by default against Frank Vacante for unpaid employment taxes and federal unemployment taxes in the amount of $21,087.91, plus interest, penalties and other statutory additions from November 1, 2002 until paid.[2]

Trial in this matter is scheduled for June 4, 2010.

---

[1] The action was originally filed in the Sacramento division of this Court.  It was transferred here on September 11, 2008.

[2] <u>United States v. Frank Vacante</u>, 1:02cv5565 OWW DLB.

1    On November 16, 2009, Frank Vacante filed a "Motion for Jury Trial."  Although the
2 motion purportedly was filed on behalf of both Frank and Ute Vacante, the motion was signed
3 only by Frank.  Additionally, Frank erroneously filed the motion in the original Sacramento case,
4 2:08cv1310 MCE KJM, which was transferred to Fresno in September 2008.[3]
5    On November 17, 2009, Plaintiff filed the instant motion to strike the Vacantes' jury
6 demand.  The Vacantes did not respond to the motion to strike.
7    On November 24, 2009, Plaintiff filed an opposition to the Vacantes' motion for jury
8 trial.  The Vacantes did not reply.
9    On November 30, 2009, Defendant Frank Vacante filed a four-page motion for summary
10 judgment.
11    On December 2, 2009, Defendant Frank Vacante filed the "Motion for Jury Trial."  The
12 document appears to be a copy of the motion filed in the original Sacramento case.

### DISCUSSION

A.    Legal Standard

Federal Rule of Civil Procedure 38(a) provides that there is a right to jury trial where either the Seventh Amendment or a federal statute so requires.  Fed. R. Civ. P. 38(a).  Defendants Frank and Ute Vacante have not identified a federal statute to support their demand for a jury trial. Accordingly, their demand depends upon the Seventh Amendment.  The Seventh Amendment limits the right to a jury trial to "[s]uits at common law, where the value in controversy shall exceed twenty dollars."  This language has been construed to require a jury trial in suits historically tried in English courts of law, but not in those actions analogous to 18th-century cases tried in courts of equity or admiralty.  Tull v. United States, 481 U.S. 412, 417. (1987).

To decide if a remedy is one of law or of equity, courts engage in a two-pronged analysis. First, courts "compare the ... action to 18th-century actions brought in the courts of England prior

---

[3] A joint status report filed in August 2008 states that Frank and Ute Vacante demand a jury trial.  Doc. 24. The Vacantes' answer to the complaint does not contain a jury demand.  However, Plaintiff has not argued untimeliness or waiver of the demand.

to the merger of the courts of law and equity.  Second, [they] examine the remedy sought and determine whether it is legal or equitable in nature." Tull, 481 U.S. at 417-18.  Courts have found the second inquiry more important than the first.  Granfinanciera S.A. v. Nordberg, 492 U.S. 33 (1989).

Plaintiff admits that the Vacantes are entitled to a jury trial on the money judgment it seeks for tax liabilities.[4]  See Damsky v. Zavatt, 289 F.2d 46, 48-52 (2d Cir. 1961).  However, Plaintiff argues that the Vacantes are not entitled to a jury trial on (1) foreclosure of tax liens; (2) alter ego liability; and (3) successor liability because they are separate claims based in equity. Plaintiff contends that where there are separate legal and equitable claims presented, the Court should determine the right to a jury trial as to each issue.  See International Financial Services Corp. v. Chromas Technologies, Inc., 356 F.3d 731, 735 (7th Cir. 2004) (noting that even if a party is entitled to a jury trial on legal claims, the court must make an independent judgment as to any equitable issue) ("Chromas Tech").

B.     Analysis

     1.     Foreclosure of tax liens

In the SAC, Plaintiff asserts five claims to foreclose federal tax liens and obtain a decree of sale for the five parcels of real property at issue pursuant to 28 U.S.C. § 7403(c).  Plaintiff contends that foreclosure of tax liens on real property are proceedings in equity to which there is no right to a jury trial.  In support, Plaintiff cites Damsky, 289 F.2d at 53, which held that foreclosure for tax liens is akin to a historic equity practice and precludes the right to a jury trial.[5]

---

[4] On May 27, 2010, the Court granted the United States' motion for summary judgment in so far as it sought to reduce to judgment the federal income tax liabilities for Frank and Ute Vacante for tax years 2000 and 2004.  The Court denied the United States' motion for summary judgment in so far as it sought to reduce to judgment assessments against Frank Vacante for in so far as it sought to reduce to judgment assessments against Frank Vacante for Form 941 Employment Tax Liabilities for the tax periods ending June 30,1993, September 30, 1993, December 31, 1993, March 31, 1994, June 30, 1994, September 30, 1994, and December 31, 1994.  The Court also denied the United States' motion for summary judgment in so far as it sought to reduce to judgment assessments against Frank Vacante for Form 940 FUTA Tax Liabilities for the tax periods ending December 31, 1993, and December 31, 1994.

[5] Plaintiff points out that the Supreme Court in Granfinanciera, 492 U.S. at 47 n.5, questioned the holding in Damsky, but notes that Granfinanciera dealt with an action to recover an alleged fraudulent conveyance of money. Plaintiff does not allege fraudulent transfers in this case.

4

1  See also United States v. Rodgers, 461 U.S. 677, 708 (1983) (a § 7403 proceeding, which
2  authorizes judicial sale of certain properties to satisfy tax indebtedness, "is by its nature a
3  proceeding in equity.").
4      Plaintiff also cites United States v. Annis, 634 F.2d 1270, 1272 (10th Cir. 1980), which
5  involved foreclosure of a lien against property.  In that case, the Tenth Circuit found that the
6  district court correctly struck a defendant's demand for jury trial.  The court reasoned that the
7  government sought "only to enforce its tax lien, which action sounds in equity and does not give
8  rise to the right of a jury trial."  Id. at 1272 (citing Gefen v. United States, 400 F.2d 476 (5th Cir.
9  1968)).  When discussing a potential intervenor, the Annis court distinguished the foreclosure
10 claim from one for recovery of taxes or where a personal judgment is sought.  The present action,
11 however, involves both the reduction of tax liabilities to judgment and foreclosure of tax liens.
12      2.      Alter Ego Liability
13      Plaintiff explains that there are three periods of liability at issue in the SAC.  The first
14 involves a sole proprietorship, VIF Insurance, which was owned and operated by the Vacantes.
15 The second involves a corporation, CVIS, and the third involves a second corporation, Instant
16 Services, Inc.  Plaintiff alleges that the two corporations operated the same business at the same
17 location with many of the same employees.  Plaintiff further alleges that both CVIS and Instant
18 Services were the alter egos of the Vacantes and thus the tax liabilities assessed against the
19 corporations should be paid by the Vacantes.  In the SAC, Plaintiff seeks a determination that (1)
20 Ute Vacante is an alter ego of CVIS; (2) Ute Vacante is an alter ego of Instant Services, Inc.; (3)
21 Frank Vacante is an alter ego of CVIS; and (4) Frank Vacante is an alter ego of Instant Services.
22 Plaintiff contends that the corporate veil should be pierced so that it can collect the taxes due
23 from the "true owners."  Motion, p. 3.
24      Plaintiff asserts that the issue of whether the defendants have a right to jury trial on the
25 alter ego claims is difficult one.  Plaintiff notes that courts are split on whether there is a right to
26 jury trial on the issue of piercing the corporate veil on an alter ego theory.  To support its
27 contention that the Vacantes are not entitled to a jury trial on this issue, Plaintiff points to
28 Chromas Tech, 356 F.3d at 736.  In that case, the Seventh Circuit applied the two-prong inquiry

under the Seventh Amendment. As to the first prong, the court indicated that the doctrine of piercing the corporate veil has roots in both courts of law and equity. The court therefore determined that the outcome depended on whether piercing the corporate veil under Illinois law was legal or equitable in nature. Id. at 736. The court looked to the nature of the relief, distinguishing legal remedies as involving money damages from equitable remedies that are coercive. Id. The court further distinguished the remedies by concluding that equitable relief is discretionary and legal relief is not. Id. (citations omitted). The court found that because piercing the corporate veil under Illinois law was, according to federal procedural law, an equitable doctrine, there was no entitlement to a jury trial on that issue. Id. at 737.

Plaintiff also cites Siegel v. Warner Bros. Entertainment Inc., 581 F.Supp.2d 1067 (C.D.Cal. 2008) to support its position that there is no right to a jury trial on the alter ego issue. In Siegel, the court considered whether the alter ego doctrine was legal or equitable in nature. As with Chromas Tech, the Siegel court noted that the historical inquiry was inconclusive, with the alter ego doctrine sounding in both law and equity. Id. at 1075. Accordingly, the court focused its analysis on whether the nature of the remedy was legal or equitable. Id. at 1075-76. In so doing, the Siegel court acknowledged other court decisions finding that the remedy of piercing the corporate veil was legal in nature because the result of the determination would be monetary damages against those behind the veil. However, the court found the Seventh Circuit's reasoning in Chromas Tech persuasive and determined that it was the nature of the relief sought, not the ultimate result, that was dispositive. Id. at 1075. The Siegel court then considered the nature of the alter ego doctrine under California law. The court determined that even if all the objective factors of alter ego were present (i.e., factual determinations), there must still be an equitable assessment of whether maintaining the corporate form would be "inequitable," which was a matter of discretion. Id. at 1076. The court found that this inherent discretionary nature had caused courts to comment that such an action rests with the court of equity, not law. Id. at 1076 (citation omitted). Accordingly, the Siegel court concluded that the alter ego claim was one sounding in equity to which no right to a jury trial existed at common law. Id.

Plaintiff contrasts the findings of Chromas Tech and Siegel with Wm Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 136 (2d Cir. 1991) ("Passalacqua"). In Passalacqua, the Second Circuit considered whether a right to jury trial exists where a judgment-creditor seeks to pierce the corporate veil and enforce a judgment obtained against a subsidiary. The court conducted the two-pronged inquiry under the Seventh Amendment. Although the court indicated that piercing the corporate veil appeared to have roots in both law and equity, the nature of the relief sought, i.e., enforcement of a money judgment, supported the conclusion that the cause of action was legal in nature. Id. at 136 (noting fact that plaintiffs sought money indicated a legal action). The Second Circuit found that it was proper for the district court to submit the corporate disregard issue to the jury. Id. at 136.

Plaintiff attempts to distinguish the conclusion reached in Passalacqua by noting the Siegel court's reasoning that it is the nature of the relief, and not the ultimate result, that should be examined. Siegel, 581 F.Supp.2d at 1075. The relief sought is an important factor in determining whether a claim is legal or equitable. Curtis v. Loether, 415 U.S. 189, 196 (1974). As such, this Court finds the reasoning of Passalacqua persuasive. Here, Plaintiff does not simply seek a determination as to whether the corporate veil should be pierced. Instead, Plaintiff seeks to reduce the tax liabilities of CVIS and Instant Services, Inc. to a monetary judgment against the Vacantes. Actions for money judgments are typically legal in nature. Dairy Queen v. Wood, 369 U.S. 469, 476 (1962). Moreover, the federal policy favoring jury trials provides support for finding the right to a jury trial in questionable or doubtful cases. See Prudential Oil Corp. v. Phillips Petroleum Co., 392 F.Supp. 1018, 1022 (S.D.N.Y.1975).

  3.  <u>Successor Liability</u>

In the SAC, Plaintiff seeks a determination that (1) CVIS is a successor in interest to the Vacantes' unincorporated business, VIF Insurance; and (2) Instant Services is a successor in interest to CVIS. Plaintiff contends that in each case, the business was conveyed for no consideration while under financial distress and to the detriment of the predecessor's creditors. Plaintiff argues that in such a situation, courts have imposed liability under the successor liability doctrine. See, e.g., Economy Refining & Service Co., Inc. v. Royal National Bank of New York,

20 Cal.App.3d 434, 439 (1971) ("Transfers of all of the assets of a person or corporation in straitened circumstances, without fair consideration, to a corporation having substantially the same ownership, by which the just claims of creditors are defeated, are of such fraudulent nature that the new corporation may be held to the debt of the old."); Ray v. Alad Corp., 19 Cal.3d 22, 29 (1977) ("California decisions holding that a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts have imposed such liability only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations").

As with the alter ego doctrine, Plaintiff notes that at least one California court has found successor liability to be an equitable issue and denied a jury trial. Rosales v. Thermex-Thermatron, Inc., 67 Cal.App.4th 187, 195-96 (1998) (determination of whether it is fair to impose successor liability involves similarly broad equitable considerations as a determination whether to pierce a corporate veil; finding that the question whether it is fair to impose successor liability is exclusively for the trial court). Plaintiff notes that federal common law of successor liability should apply here, but contends that "it is not clear that California law differs from the federal case law." Motion, p. 10. Plaintiff cites E.E.O.C. v. G-K-G, Inc., 39 F.3d 740, 748 ( 7th Cir. 1994). Although Plaintiff misquotes it, the E.E.O.C. case imposes successor liability under federal common law where two conditions are met: (1) the successor had notice of a claim arising from violation of federal rights before the acquisition; and (2) there is substantial continuity in the operation of the business before and after the sale. Id. at 748.

Plaintiff acknowledges that other cases have focused on the money judgment sought and found the right to a jury trial. In re G-I Holdings, Inc., 380 F.Supp.2d 469, 476 (D.N.J. 2005), examined the issue of whether the nature of the relief in an action to pierce the corporate veil is legal or equitable. Id. at 476. The court essentially concluded that "[c]ommon sense" shows that "no party seeks to pierce the corporate veil merely to strip a company of its corporate protection; the underlying purpose of a veil-piercing claim in a lawsuit seeking the determination of damages

1 is to obtain monetary relief." Id. at 477.  The court concluded it was a legal remedy and denied
2 the motion to strike the jury demand.
3      As with Passalacqua, the Court finds the reasoning of In re G-I Holdings, Inc. persuasive.
4 Plaintiff seeks to reduce the tax liabilities of CVIS and Instant Services to judgment and collect
5 the monetary judgment from Defendants Frank and Ute Vacante.  This is in the nature of a legal
6 remedy.  Passalacqua, 933 F.2d at 136; In re G-I Holdings, Inc., 380 F.Supp.2d at 476-77.

## CONCLUSION

Based on the above, the Court denies the motion to strike the jury demand.

IT IS SO ORDERED.

Dated:   **June 2, 2010**              /s/ Dennis L. Beck
                                    UNITED STATES MAGISTRATE JUDGE